# WILLIAM BEARD ET AL.

## V.

# JANET SKELDON.

1. MINES—EVIDENCE.—In a suit brought under section 14 of the "Act providing for the health and safety of persons employed in coal mines," where the violation charged in the declaration was a failure to furnish the drum with a sufficient brake, thereby causing the death of appellant's husband, an employe of the mine, evidence tend'ng to show the character, purpose and effect of a brake and the manner in which it would have been applied had there been one, is admissible.

2. MEANING OF TERM "GIVING OUT," IN STATUTE.—Where the evidence showed that the cage went down the shaft in consequence of some failure or diminution in the pressure of the steam on the face of the piston and not in consequence of the breaking, or want of strength, proper construction or repair of the machinery. Held, that any giving away of the machinery, whether from the breaking or imperfection of some of its parts, a failure of the motive, or rather of the static power to hold it in equilibrium, or from any other cause, is a "giving out" of the machinery within the meaning of the statute.

3. CONSTRUCTION OF STATUTE.—Although the statute seems to contemplate the recovery of the damages sustained by the widow, lineal heirs, adopted children and others dependent upon the deceased, the court is of opinion that it gives but one action, and when a suit is brought by a person entitled to bring it, all damages recoverable for the death of deceased must be recovered in that action. Held, in such a suit brought by the wife of deceased, evidence that the latter left children surviving him, is admissible.

4. THE SAME—DISTRIBUTION.—Although the statute fails to make any express provision as to the distribution of the moneys recovered, yet, as it creates a right of action for the recovery of the damages sustained by the several parties, the implication is unavoidable that the damages so recovered are subject to distribution among the several beneficiaries according to their respective rights.

5. EVIDENCE OF PECUNIARY CIRCUMSTANCES.—The statute authorizes the recovery only of damages resulting to the survivor from the death of the person killed. As such damages are not dependent upon, nor are they measured by the wealth or poverty of the survivors, evidence as to the pecuniary circumstances of the plaintiff and her children at the time of her husband's death and up to the day of the trial, was inadmissible.

6. CONTRIBUTORY NEGLIGENCE.—As contributory negligence on the part of the engineer, in the management of the engine, was a ground of recovery, embraced neither within the statute nor the declaration, plaintiff could not take advantage of such matter.

Appeal from the Superior Court of Cook county; the Hon. Sidney Smith, Judge, presiding. Opinion filed June 27, 1883.

Messrs. McConnell & Rogers, for appellants; that this statute should be construed as a penal statute, cited Richardson v. N. Y. C. R. R. Co. 98 Mass. 85.

The proof must correspond with the allegations, even though the allegations have been made with unnecessary particularity: Bloomington v. Goodrich, 88 Ill. 558; Gridley v. Bloomington, 68 Ill. 47; Chitty on Pleading, 392.

Plaintiff's damages were entirely independent of the children: Shaw v. Boston R. R. Co. 8 Gray, 45.

Plaintiff's condition in life had no bearing upon the amount of her recovery: I. C. R. R. Co. v Baches, 55 Ill. 379; Malone v. Hawley, 46 Cal. 409.

Mr. Wm. Mooney and Mr. Wm. H. Skelly, for appellee; that the statute should be liberally construed, and that plaintiff's condition in life had a bearing upon her right of recovery, cited Bartlett Coal & M. Co. v. Roach, 68 Ill. 174; Litchfield Coal Co. v. Taylor, 81 Ill. 590; Wesley City Coal Co. v. Healer, 84 Ill. 126; Quincy Coal Co. v. Hood, 77 Ill. 68.

Bailey, P. J. This suit was brought by Janet Skeldon, the widow of George Skeldon, deceased, under the provisions of section 14 of the "Act providing for the health and safety of persons employed in coal mines," approved May 28, 1879. (R. S. Chap. 93, Sec. 14.) At the time of and prior to the death of said George Skeldon, Beard, Hickox & Co., the defendants, were the owners and operators of a certain coal mine in Grundy county, Illinois, operated by a shaft and provided with a steam engine, and other machinery for hoisting the coal. The hoisting apparatus consisted of a cage, which was raised and lowered in the shaft by means of a wire rope suspended from a drum placed above the mouth of the shaft, said drum being connected with and run by the engine.

Said Skeldon was an employe of the defendants, at work in

the mine, and on January 20, 1881, was directed by the defendant's foreman or pit boss, to clean out the "sump" or open space at the bottom of the shaft, under the cage seat. Before going into the "sump," Skeldon signaled the engineer to hoist the cage, and after it had been hoisted to a point midway in the shaft, he signaled him to stop it. Skeldon then went into the "sump" and proceeded to clean it out.

In order to hold the cage in its position, suspended part way up the shaft, the engineer had allowed the steam to go through the throttle valve, against the face of the piston, thus producing an equilibrium. He then thinking, as he testifies, that there was sufficient steam to hold the cage in its position, left the engine and went to the boiler room to regulate the valves, which supplied water to the boilers. In his absence, the force of the steam upon the face of the piston was in some way so diminished that the cage descended the shaft and struck said Skeldon, and so crushed and injured him that he soon afterward died.

The declaration consisted of four counts, but the court at the trial withdrew the first and third counts from the consideration of the jury. The second count avers that the defendants were the owners and operators of said mine, and employed the plaintiff to work therein; that it was the duty of the defendants to have provided a sufficient brake upon every drum, to prevent accidents in case of the giving out or breaking of the machinery; that the defendants, contrary to the statute, willfully omitted to provide such brake, and that by reason thereof, while the defendants' machinery and drum were being used by them for the purpose of holding the cage suspended in said shaft, and while said Skeldon was occupied at the bottom of said shaft in cleaning out the "sump" at the special request of the defendants, the defendants' machinery gave out for want of a brake upon the drum, causing said cage to descend said shaft, thereby causing the death of said Skeldon. The fourth count is substantially the same, except that it avers that the drum gave out, and that the cage suspended therefrom dropped and struck said Skeldon, and thereby caused his death.

Beard v. Skeldon.

The sixth section of the act above mentioned provides that the owner, agent or operator of every coal mine operated by a shaft shall, among other things, provide " a sufficient brake on every drum, to prevent accident in case of the giving out or breaking of the machinery." The evidence shows, without any dispute, that the drum in use at the mine in question was provided with no brake, and the evidence tends to show that the omission on the part of the defendants, to provide such brake was willful. The fourteenth section of said act, the section under which this suit was brought, is as follows:

"For any injury to person or property, occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation, or willful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons, who were before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives."

At the trial, the jury found the defendants guilty, and assessed the plaintiff's damages at $6,000, and the plaintiff, after remitting $2,000 from the verdict, had judgment for the residue. Various errors are assigned by the appellants, which, so far as seems to us to be necessary to a proper decision of the case, we will consider in their order.

Exception was taken to the admission of certain evidence, tending to show the character, purpose and effect of a brake, and the manner in which it would have been applied, if there had been one. We are unable to see the impropriety of evidence of this character. It was for the jury to determine whether the machinery gave out in consequence of the absence of a brake. This was a mere question of fact. To decide it properly, the jury needed to know the character and office of a brake, its application to such machinery as was in use at the mine in question, together with its mode of operation and effect. None of these matters were defined by the

statute, nor could they be determined as questions of law. They could, therefore, be ascertained only from the testimony of the witnesses.

It is urged, in the next place, that the evidence wholly fails to show that the machinery "gave out" within the meaning of the statute. It is true there is no evidence that the engine or any other part of the machinery broke, or that there was any material imperfection in the machinery itself, other than the want of a brake, and if it is to be held that the "giving out" of the machinery mentioned in the statute, refers only to some breakage or failure in the machinery itself, it must be conceded that the evidence fails to make out a case within the statute. All the evidence shows that the cage went down the shaft in consequence of some failure or diminution in the pressure of the steam on the face of the piston, and not in consequence of the breaking or want of strength, proper construction or repair of the machinery. But we are not inclined to place upon the statute so narrow an interpretation. It was enacted for the purpose of protecting life and property when exposed to great and peculiar dangers, and for the promotion of its wise and beneficent objects, it should receive a liberal and reasonable construction.

The evident design of the statute in requiring that the drum should be supplied with a brake, was to compel the furnishing of an appliance which would hold the cage securely while suspended in or over the shaft, and prevent its going down, in case the machinery, for any reason, should fail to be sufficient to hold it. Any giving away of the machinery, whether from the breaking or imperfection of some of its parts, a failure of the motive, or rather of the static power, to hold it in equilibrium, or from any other cause, was, as it seems to us, a "giving out" of the machinery within the meaning of the statute. The importance of a brake was just as great in the one case as in the other. This interpretation is entirely in harmony with the objects and purposes of the statute, and so far as we can see, does no violence to its language. It follows that there was no want of evidence tending to prove the averments of the declaration in this respect. For the

Beard v. Skeldon.

same reason, the instructions asked by the defendants' counsel, in which they sought to have the court place upon the statute, the interpretation for which they now contend, were properly refused.

The court admitted evidence against the defendants' objection, showing that the plaintiff's husband left surviving him several children, and this is assigned for error. It is urged that, under the statute, the defendants are liable not only to an action by the widow of the deceased, but also to another action in favor of his children, and consequently that the widow is entitled to recover only her individual damages, and that evidence of the existence of other parties who were also damaged by the death of the deceased, was wholly immaterial, and likely to influence the jury unfavorably to the defendants.

We are inclined to the opinion that, although the statute seems to contemplate the recovery of the damages sustained by the widow, lineal heirs, adopted children, and others dependent upon the deceased for support, it gives but one action. It provides that "a right of action" shall accrue to the widow of the person killed, his lineal heirs, *or* adopted children, *or* to any other person or persons dependent on him for support. Only one right of action is created, and that right may be availed of by one of several persons' or classes of persons. The right is given in the alternative, and when one suit is brought by a person entitled to bring it, all damages recoverable for the death of the deceased, must necessarily be recovered in that action.

A somewhat similar question arose in the case of the Huntingdon and Broad Top R. R. Co. v. Decker, 84 Penn. St. 419. That was an action to recover damages for the death of the plaintiff's husband, under a statute which provided that "the persons entitled to recover damages for any injury causing death shall be, the husband, widow, children *or* parents of the deceased, and no other relatives." The statute, however, contained a further provision omitted in ours, that the money recovered should be distributed as in cases of intestacy. The court, in holding that but one action was given, say: "If the

deceased leaves a husband, he alone is clothed with the right of action; if the wife is survivor, she is entitled to bring suit; if there be neither surviving husband nor widow, the right of action is given to the children; and if there be neither husband, nor widow, nor children surviving, it is given to the parents of the deceased. But while the right of action is given, according to the circumstances of the case, to one of four designated parties, it. is clear from the wording of the act that the entire sum recovered is not always to be retained by the plaintiff in his or her own right. " · So far as the question as to who is entitled to bring suit under our statute is concerned, we think the foregoing case throws very considerable light upon the case at bar. And although our statute fails to make any express provision as t ） the distribution of the moneys recovered, yet as it creates a right of action for the recovery of the damages sustained by the several parties mentioned, the implication would seem to be unavoidable that the damages so recovered are subject to distribution among the several beneficiaries according to their respective rights. We perceive no error, then, in admitting evidence that the deceased left children surviving him.

But the plaintiff was permitted, against the objection and exception of the defendants, to give evidence at very considerable length, as to the pecuniary circumstances of herself and children, both at the time of her husband's death, and even up to the time of the trial. This clearly was error.

The rule is too firmly settled in this State to admit of discussion, that in suits under the general statute, which gives to the personal representative of the deceased, an action for damages where the death is caused by the wrongful act, neglect or default of another, evidence of the pecuniary circumstances of the widow and next of kin of the deceased, is inadmissible. C. & N. W. R. R. Co. v. Moranda, 93 Ill. 302; I. C. R. R. Co. v. Baches, 55 Id. 379; City of Chicago v. O'Brennan, 65 Id. 160; P. Ft. W. & C. R'y Co. v. Powers, 74 Id. 341; C. & N. W. R. R. Co. v. Howard, 6 Bradwell, 569.

We see no reason why the same rule should not obtain in suits like the present. The phraseology of the statute above

referred to differs somewhat, it is true, from that of the one under which this suit is brought. The recovery authorized by the former, is for the *pecuniary* injuries resulting to the widow and next of kin from the death of the deceased, while that authorized by the latter, is for any *direct* damages sustained by reason of the loss of life of the person killed. Without attempting to criticise narrowly these two forms of expression, it is sufficient to say, that both authorize the recovery only of damages resulting to the survivors, from the death of the person killed. Such damages are not dependent upon, nor are they measured by the wealth or poverty of the survivors. As said by the Supreme Court of Michigan, in C. & N. W. R'y Co. v. Bayfield, 37 Mich. 205: "What the family would lose by the death, would be what it was accustomed to receive, or had reasonable expectation of receiving in his lifetime; and to show that the family was poor, has no tendency toward showing whether this was, or was likely to be, large or small. One man contributes liberally to aid his poor relatives; another delights in contributing luxuries, where comforts are already abundant; but when the contribution is cut off in either case, the extent of the loss is not measured by the wealth or poverty of the recipient, but by the contribution itself. A dollar lost, whether by a poor man or a rich man, is neither more nor less than a dollar, and a reasonable expectation of benefit to a certain amount, must, when lost, be compensated to the same extent, whether the loser be rich or poor."

The damages recoverable under Lord Campbell's Act, are not expressly limited, as by our statute, to the pecuniary injuries resulting from the death to the survivors, but the jury are in express terms authorized to "give such damages as they may think proportioned to the injury resulting from such death"; yet it is well settled in England, that the rule of damages under that act is, " the reasonable expectation of pecuniary advantage, from the continuance of the life of the deceased." Dalton v. S. C. R'y Co. 4 Com. Bench, (N. S.) 296; Franklin v. S. E. R'y Co. 3 Hurl & Norm. 211; Pym v. G. N. R'y Co. 4 Best & Smith, 396; See, also, Kesler v. Smith, 66 N. C. 154; Central R. R. v. Moore, 61 Ga. 151.

It follows that the evidence as to the pecuniary circumstances of the plaintiff and her children, at the time of the death of her husband, was wholly irrelevant, and could have had but one end, that of illegally exciting the sympathy and improperly influencing the finding of the jury. For reasons still stronger, it was improper to admit evidence of the pecuniary circumstances of the plaintiff and her family, at the date of the trial.

The court also, against the objection of the defendants, admitted evidence tending to show negligence on the part of the engineer in charge of the defendant's engine. That, in our opinion, was error. The suit being brought under the fourteenth section of the act in relation to "Miners," the only acts of negligence upon which a recovery could be based are those specified in that section, viz.: willful violations of the act, or willful failures to comply with its provisions. The only violation of the act, or failure to comply with its provisions, charged in the declaration, is a failure to furnish the drum with a sufficient brake. Contributory negligence, on the part of the engineer, in the management of the engine, was a ground of recovery embraced neither within the statute, nor the declaration, and was not a matter of which the plaintiff could take advantage.

It is insisted that the damages recovered are excessive, but as the case must be submitted to another jury, we forbear commenting on the evidence bearing on that question.

For the errors above pointed out, the judgment will be reversed and the cause remanded.

Judgment reversed.