# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## Fourth District—August Term, 1901.

### Willis Coal & Mining Co. v. Benton Grizzell et al.

1. Statutes—*Construction of "Direct," Chap. 93, Sec. 33, R. S.*— The word "direct," as used in Chap. 93, Sec. 33, Mines and Mining, does not pertain to the cause of the injury, but to the effect of it.

2. Same—*Rule Where the Willful Violation of, Caused the Injury.*— Where there is a willful violation of a statute, the true rule is that if the willful violation of the statute "occasioned" the injury, then it is wholly immaterial whether the consequence of such violation, as it did in fact occur, could have been foreseen or not, nor whether the injury was directly or indirectly caused by such violation. It is sufficient if the violation of the statute is willful, and that it did in fact occasion the injury.

3. Contributory Negligence—*Will Not Bar a Recovery Where There is a Willful Violation of a Statute.*—Where there has been a willful violation of a statute the contributory negligence of the deceased will not bar a recovery.

4. Pleadings—*When the Declaration Will be Construed Most Strongly in Favor of the Pleader.*—Where no demurrer has been interposed to the declaration, the general issue has been filed, and the case has progressed through the trial to a verdict without objection as to the sufficiency of the declaration, the averments of the declaration must be construed most strongly in favor of the pleader. Every reasonable inference and intendment comes to the support of the declaration.

5. Parties—*All Must Join in One Suit Under the Miners Act.*— In an action under the "miners" act by widow, lineal heirs, adopted children or dependents, for violation thereof, all entitled to recover must be joined in one suit, and all damages recoverable must necessarily be recovered in that action.

6. Evidence—*Of Pecuniary Condition of Party Bringing Suit*

(480)

Willis Coal & Mining Co. v. Grizzell.

*Under "Miners" Act.*—The financial condition of one bringing an action under the "miners" act for damages for death caused by wrongful act, is immaterial, and evidence thereof should not be admitted.

7. APPELLATE COURT PRACTICE—*When Judgment Will Not Be Reversed on the Grounds of Misconduct of Jury.*—The Appellate Court will not reverse a judgment on the grounds of misconduct of the jury, where it is apparent to the court that substantial justice has been done and that the appellant's rights could not have been prejudiced by such misconduct.

**Action on the Case.**—Death from negligent act. Appeal from the Circuit Court of Perry County; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

WISE & McNULTY, attorneys for appellant.

WILLIAM A. SCHWARTZ and CICERO R. HAWKINS, attorneys for appellees.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Perry County, by appellees against appellant, to recover damages on account of the death of Thomas Lee Grizzell, who at the time of his death was an employe in the service of appellant. The declaration charges that appellant was operating a coal mine by shaft, and that it willfully failed and neglected to fence the same as required by statute; that in consequence thereof deceased was killed, and that appellees have sustained damages by reason of his death. Verdict and judgment in favor of appellees for the sum of $1,000.

The shaft in question was seven by fourteen feet in size and eighty feet deep, divided into two equal compartments by means of a wooden partition. Through this shaft cages were operated in the usual manner, for lowering and raising men and materials, and hoisting coal. In one corner of the shaft was a speaking tube extending to the bottom of the shaft. This tube had been connected with the outside of the shaft, but a few days before the injury complained of this connection was broken off, and the top of the tube was left eighteen inches from the curbing. This landing had been enclosed by a fence and two gates. The

speaking tube was in the southeast corner of the north compartment of the shaft, and the two gates were on the east side, fastened to the corner posts of the curbing of the respective compartments. To use the speaking tube in its broken condition one would have to lean over the shaft, thereby exposing himself to the risk of being struck by an ascending or descending cage. About three weeks before the injury, appellant took down one of the gates, and took the lower hinge off the other, and propped it back and built a car track through the opening so that the gate could not be closed, and thus the fence remained to the time of the injury complained of.

Appellees' intestate was in the service of appellant as a carpenter's helper. He had been in that service about two months. The evidence tends to show that on the occasion of the injury, the boss carpenter directed deceased to go to the top boss and tell him to have some shovels sent up from the bottom of the shaft; that he obeyed this order, and was directed by the top boss to go and call down for them; that in obedience to this order he went in through the open space left by the removal of one of the gates, got on his knees, leaned over the shaft, and while attempting to communicate the message through the tube to those at the bottom of the shaft, he was struck by a descending cage and killed. The statute provides that, " the upper and lower landings at the top of the shaft   *   *   *   shall be securely fenced with automatic or other gates, so as to prevent either men or materials from falling into the shaft." And further :

" For any injury to person or property, occasioned by any willful violation of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation or willful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life, dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or

lives, not to exceed the sum of five thousand dollars." Hurd's 1899, Sec. 2 (c), and Sec. 33.

While many errors are assigned upon the record in this case, only five are presented in appellant's brief and argument. These are: That the court denied appellant's motion to direct a verdict of not guilty; that the court denied appellant's motion to enter judgment in its favor on the special findings of the jury; that the court denied appellant's motion in arrest of judgment; that the court admitted improper evidence, and that the verdict of the jury "is in direct and open disregard" of the instructions given by the court.

The evidence conclusively proves that appellant was in willful violation of the statute in the respect charged in the declaration at the time of the injury complained of. This, we understand, is not seriously denied by counsel, but they contend that the death "was not principally and directly caused by" this violation, and cite in support of this contention, Coal Run Coal Co. v. Jones, 127 Ill. 379, Illinois Fuel Co. v. Parsons, 38 Ill. App. 182, and Missouri & Illinois Coal Co. v. Schwalb, 77 Ill. App. 593. These cases do not support this contention. None of them hold that to warrant a recovery, the death must have been directly caused by the violation of the statute, nor can this be inferred from anything that is said by the court in any of these cases. The statute is—for any injury occasioned, a right of action shall accrue for any direct damages sustained. The word "direct" does not pertain to the cause of the injury, but to the effect of it. In this connection counsel also contend that appellant can not be held liable because the consequence of its violation of the statute, as it occurred in this case, could not have been foreseen as a result of its conduct, and cite the West Chicago Street Ry. Co. v. Feldstein, 169 Ill. 139, and Braun v. Craven, 175 Ill. 401. These cases both deal with common law negligence and do not furnish the proper rule to be applied where willful violation of a statute, of the character of the one in this case, is involved. The true rule in such cases is, that if the will-

ful violation of the statute " occasioned " the injury, then it is wholly immaterial whether the consequence of such violation, as it did in fact occur, could have been foreseen or not, nor whether the injury was directly or indirectly caused by such violation. It is sufficient that the violation of the statute was willful, and that it did in fact occasion the injury. Roth v. Eppy, 80 Ill. 283; Kennedy v. Whittaker, 81 Ill. App. 605; Munz v. The People, 90 Ill. App. 647.

Counsel contend that the death was caused by the act of deceased in going to the shaft and leaning over it; that this act was intentional on his part, and that to have carried out this intention, if there had been gates, as the law requires, he would have opened them and exposed himself as he did, with the result that followed. This is mere speculation, upon a supposed state of facts that did not exist. There were no gates there. Deceased was ordered to call down the shaft. The openings in the fence invited him into the position he took in obeying this order, and his death was the result. The most that can be said is that deceased was negligent, and contributory negligence will not bar a recovery in this class of cases. Catlett v. Young, 38 Ill. App. 198; Odin Coal Co. v. Denman, 84 Ill. App. 190; Carterville Coal Co. v. Abbott, 181 Ill. 495; Odin Coal Co. v. Denman, 185 Ill. 413.

A number of special interrogatories were submitted to the jury, and counsel contend that the court should have rendered judgment in favor of appellant upon these answers. These interrogatories disclose the vice that runs through appellant's entire defense. Two of these will suffice for all :

" Was Grizzell's death directly and principally caused by his being hit by the cage of defendant's mine as it was descending, and while he was leaning over the shaft ? A. Yes."

" Would gates at the surface landing have prevented the accident, provided deceased was in the same position he was when he was injured ? A. No."

These interrogatories ignore the antecedent cause, and raise immaterial issues. The primary question lies back of

the point covered by these interrogatories, and it was not material what contact directly caused his death, nor whether he was leaning over, standing up, or going head down to the bottom of the shaft at the instant he received his death blow. If appellant's willful wrong occasioned his death, all else is immaterial. The following interrogatory was also submitted to the jury and answered:

"Would gates at the surface landing have prevented Grizzell from taking the position he was in when injured? A. Yes."

We think this answer is fairly inferable from the evidence, and is conclusive of appellant's liability. Counsel argue at great length about what might have happened if the shaft had been properly fenced, but the probabilities in this case are, that if appellant had obeyed this wise and humane law, especially enacted for the protection of human life, that what actually did happen to deceased would have been avoided — that obedience to the law would have accomplished the purpose of the law.

Counsel complain of the action of the court in denying their motion in arrest of judgment. They contend that the averments of the declaration must be construed most strongly against the pleader, and that when so construed the declaration does not show a right in the plaintiffs to maintain the action. In this contention counsel are in error. The rule contended for does not apply to a state of record like the one before us. Where no demurrer has been interposed to the declaration, and the general issue has been filed, and the case has progressed through the trial and to verdict, without objection as to the sufficiency of the declaration, as was the case here, the rule is the reverse of that contended for. In such case the averments of the declaration must be construed most strongly in favor of the pleader. In such case, every reasonable inference and intendment comes to the support of the declaration. (Gerke v. Fancher, 158 Ill. 375.) Applying this rule to this case, the declaration is not so defective as to warrant the court in sustaining a motion in arrest. If the declaration had been demurred to, and the objections urged against it then

that are presented now, it would have raised some new and interesting questions, which we deem it not our duty here to either state or discuss.

Deceased was a young and single man, earning $2 a day, residing in his father's family and contributing his earnings to the support of the father and family. He left him surviving no widow or child or adopted child, nor mother, but did leave a father, one brother and three sisters. These all joined as plaintiffs, and properly so; for when one suit is brought by a person entitled to bring it, all damages recoverable for the death must necessarily be recovered in that action. There can be but one suit. Beard et al. v. Skeldon, 13 Ill. App. 54.

There was no error in the admission of evidence. The evidence complained of all pertained to the environment, the manner of conducting the business, the uses of the appliances, and manner in which they were and might be used. All this was competent.

It is strenuously insisted that the verdict is " in direct and open disregard " of the second, third, fourth, fifth, sixth, seventh, eighth, tenth and twelfth instructions given by the court upon request of appellant, and that therefore this court should reverse the judgment. As a series these instructions do not state the law applicable to the facts of this case, and as separate propositions, few if any of them are accurate. It is only necessary to exhibit two of them to expose the vices that in some form permeate the whole series.

" 8. The court instructs the jury, that if you believe from the evidence that Thomas Lee Grizzell did not fall into the shaft in question, but that he voluntarily leaned over said shaft, and while he was in this position he was knocked into the shaft or cage, by the cage, plaintiffs can not recover."

This instruction does not embrace the controlling question—the antecedent cause; confines the inquiry to the victim and the trap at the instant of the injury, and wholly ignores all question as to responsibility for the constructing and baiting of the trap.

"9. The court instructs you that if you believe from the evidence in this case that Benton Grizzell, one of the plaintiffs in this suit, was, at the death of Thomas Lee Grizzell, able to and did support himself, then there can be no recovery, as the case is now before you, and you should find for defendant."

Benton Grizzell was the father and a lineal heir of deceased. The language of the statute is not lineal descendants, but "lineal heirs." In such case the financial condition of the plaintiff is wholly immaterial.

In Beard et al. v. Skeldon, 13 Ill. App. 54, a case involving the same statute upon which the suit in this case is based, it is said :

"The rule is too firmly settled in this State to admit of discussion, that in suits under the general statute, which gives to the personal representative of deceased, an action for damages where the death is caused by the wrongful act, neglect or default of another, evidence of the pecuniary circumstances of the widow and next of kin of the deceased, is inadmissible. We see no reason why the same rule should not obtain in suits like the present. The phraseology of the statute above referred to differs somewhat, it is true, from that of the one under which this suit is brought. The recovery authorized by the former, is for the pecuniary injuries resulting to the widow and next of kin from the death of the deceased, while that authorized by the latter is for any direct damages sustained by reason of the loss of life of the person killed. Without attempting to criticise narrowly these two forms of expression, it is sufficient to say, that both authorize the recovery only of damages resulting to the survivors, from the death of the person killed. Such damages are not dependent upon, nor are they measured by the wealth or poverty of the survivors. As said by the Supreme Court of Michigan in C. & N. W. Ry. Co. v. Bayfield, 37 Mich. 205, ' What the family would lose by the death, would be what it was accustomed to receive, or had reasonable expectations of receiving in his lifetime; and to show that the family was poor, has no tendency toward showing whether this was, or was likely to be, large or small. One man contributes liberally to aid his poor relatives; another delights in contributing luxuries, where comforts are already abundant; but when the contribution is cut off in either case, the extent of the loss is not measured by the wealth or poverty of the recipient,

but by the contribution itself. A dollar lost, whether by a poor man or a rich man, is neither more nor less than a dollar, and reasonable expectation of benefit to a certain amount, must, when lost, be compensated to the same extent, whether the loser be rich or poor.' "

The opinion above quoted from at such length is by Mr. Justice Bailey, before his promotion to the Supreme Court.

While it is the duty of a jury, in a civil case, to accept and act upon the law as the court gives it to them, whether the law as given is correct or not, and that to return a verdict " in direct and open disregard " of the instructions of the court is misconduct of a jury, still, appellate courts will not reverse a judgment on the grounds of misconduct of the jury, where it is apparent to the court that substantial justice has been done, and that appellant's rights could not have been prejudiced by such misconduct.

The judgment of the Circuit Court is affirmed.