CHICAGO & NORTHWESTERN RAILWAY CO. v. ISABELLA BAY--
FIELD, ADMINISTRATRIX OF DAVID WILLIAMS.

*Master and Servant—Injuries to Subordinate Co-Employee—Risks of*
*Employment—Measure of Damages—Comp. L., § 2351.*

The Supreme Court will not notice evidence where the verdict·
below shows that the jury must have found against it.

An employee who refuses to obey all lawful orders is liable to
be deprived of his place and required to pay damages.

A master is estopped from insisting that his servant is in the·
wrong in not refusing to obey an unwarranted order.

The orders of a master are so far presumptively lawful that the
·servant has the burden of showing a lawful reason for refus--
ing to obey them.

The only risks which a servant assumes are those which prop-
erly belong to his employment.

A master is liable for injuries to his servant resulting from the·
master's negligence in exposing the servant to risks which
the latter is incapable of appreciating.

Where a servant in obeying his master's orders incurs the risk .
of machinery which it is reasonably probable may be safely
used by extraordinary caution and skill, he is not guilty of·
concurring negligence.

A master is not responsible for a positive wrong intentionally
or recklessly done by his servant, beyond the scope of his
business: that is the personal trespass or tort of the servant.

A master is responsible for acts of his servant done within the
scope of his business and in furtherance of his interests, but
done in excess, or even in disobedience, of his orders, express,.
or implied; in employing the servant, the master takes the
risk of his disobedience. He is therefore liable for injuries
resulting from such acts not only to outsiders, but to subor--
dinate fellow-employees.

Under a Michigan statute (Comp. L., §§ 2350–1) allowing the
widow or next of kin of a person killed by the negligence
of a railroad company to recover damages measured by the
"pecuniary injuries" resulting to them: *Held*, that their·
actual pecuniary circumstances are not to be considered; nor·
defendant's wealth.

Damages in the sum of $3,400 were awarded against a railway
company for the killing of an employee of feeble intellect,.

hired at $1.40 a day. *Held* excessive, under a statute (Comp. L., § 2351) measuring the damages by the "pecuniary injuries" inflicted on the widow or next of kin, inasmuch as the interest on this amount would enable them to realize a perpetual income amounting annually to more than three-fourths of his annual earnings.

Error to Marquette.	Submitted June 15.	Decided Oct. 2.

TRESPASS ON THE CASE for damages under Comp. L., § 2351, for the negligent killing of the plaintiff's intestate and next of kin.	The facts are in the opinion.

*Ball & Owen* for plaintiff in error.	The superintendent of a construction train who hires the employees engaged on it, is their co-employee. *Wright v. N. Y. Cent. R. R. Co.*, 25 N. Y., 565; *Gillshannon v. Stony Brook R. R. Co.*, 10 Cush., 228; *Warner v. Erie Ry. Co.*, 39 N. Y., 479; *Laning v. N. Y. Cent. R. R. Co.*, 49 N. Y., 528; *Sherman v. R. & S. R. R. Co.*, 17 N. Y., 156; *Mich. Cent. R. R. Co. v. Dolan*, 32 Mich.; 510; *Hofnagle v. N. Y. C. & H. R. R. R. Co.*, 55 N. Y., 608; *St. Louis, etc., R. R. Co., v. Britz*, 8 Chic. Legal News, 108; 1 Redf. on Railways, 553; Shearman & Redf. on Negligence, §§ 103-5; 2 S. L. Rev., N. S., 108. And the railway company is responsible for injuries done an employee by the fault of a co-employee, only where the latter represents it. *Brabbits v. C. & N. W. Ry. Co.*, 38 Wis., 289. In other respects, the employee assumes the risk of such injuries together with the other risks incident to the employment. *Gartland v. T. W. & W. Ry. Co.*, 67 Ill., 498. It is beyond the scope of an agent's authority to order an employee of his principal to do work for which he was not employed. *Moore v. Sanborne*, 2 Mich., 529; *Parker v. Erie Ry. Co.*, 5 Hun, 57; *Isaacs v. Third Ave. R. R. Co.*, 47 N. Y., 122.

*George W. Hayden* and *Wm. H. Parks* for defendant in error. A corporation is responsible for injuries resulting from the negligence of a representative in requiring an inexperienced subordinate to incur risks not in the course of

his duty. *Goddard v. Grand Trunk Ry. Co.*, 57 Me., 223; *Coombs v. New Bedford Cordage Co.*, 102 Mass., 572; *Railroad Co. v. Fort*, 17 Wall., 558; *Greenleaf v. Ill. Cent. R. R. Co.*, 29 Ia., 14; 2 S. L. Review, 116; *Lalor v. C., B. & Q. R. R. Co.*, 52 Ill., 401. An employee who has entire control over a subordinate employee, and the right to discharge him, is not his co-employee (*Mann v. Oriental Mill Co.*, 14 Am. L. Reg., 725; *Indianapolis, etc., Ry. Co. v. Love*, 10 Ind., 556; *Railway v. Jackson*, 55 Ill., 492; Shearman & Redf. on Negligence, § 102), but in effect his employer, *Flike v. Bost. & Alb. R. R. Co.*, 53 N. Y., 551. Comp. L., § 2351, was amended and modified in 1 Sess. L. 1873, Act 198, Art. V., §§ 7–8, allowing more latitude in assessing damages. Where a railway company is liable in damages for the death of an employee, actual, not vindictive damages are recoverable, *Ihl. v. R. R. Co.*, 47 N. Y., 317, provided the jury finds no contributory negligence. *Oldfield v. N. Y. & Harlem R. R. Co.*, 14 N. Y., 310; *McIntyre v. R. R. Co.*, 37 N. Y., 288; *Quin v. Moore*, 15 N. Y., 433; Field on Damages, 516. It is to be largely left to the jury to decide what the actual damages were, from the facts and circumstances; no special damage need be alleged or proved. *Ill. Cent. R. R. Co. v. Barron*, 5 Wall., 90; *Tilley v. H. R. R. R. Co.*, 29 N. Y., 252; *O'Mara v. R. R. Co.*, 38 N. Y., 445; Sedgwick on Damages, 647, n. The distributee need not be shown to have had any legal claim on the deceased for support. Field, 505; 2 Redf. on Railways, 246, n; 250, n. The jury may give prospective damages on proof warranting it, *Drew v. Sixth Ave. R. R. Co.*, 26 N. Y., 50; it cannot be bound by any precise rule. *Penn. R. R. Co. v. Ogier*, 35 Penn. St., 60.

COOLEY, C. J. The case of the plaintiff in the court below was substantially the following:

In May, 1875, Williams, the intestate, a young man between seventeen and eighteen years of age, was living with his mother, the plaintiff, and his sister. He was a little lame, and not strong intellectually. He was employed by the railway company and set at work as a common laborer

with a construction train at one dollar and forty cents per day, which were then the customary wages of common laborers. Brakemen at the same time were paid two dollars a day. It was not shown that in hiring Williams anything was said regarding the particular service to be required of him, but it was claimed by the plaintiff that the wages to be paid sufficiently indicated the service, and we think there was some evidence tending to show that service as a common laborer alone was bargained for. One Smith was in charge of the construction train and of the laborers employed therewith, and though there were regular brakemen, he sometimes directed Williams to perform that service on particular occasions though he had previously had no experience as brakeman. On a certain day in June, 1875, Williams was on a flat car near the engine, assisting in unloading ties, when Smith ordered him to go back to the caboose and help stop the train. He started back, and was not seen again until it was discovered that he had fallen between the cars and been run over, receiving injuries which speedily resulted in his death. On these facts it was claimed that the sending of Williams forward to act as brakeman was wrongful, and in view of the dangerous character of the service was negligent, and that as the railway company had put Williams under the direction and control of Smith, and subjected him to Smith's orders, it was responsible for Smith's wrongful conduct, and the death of Williams was consequently a death caused by the wrongful act, neglect or default of the railway company, for which an action would lie under the statute. It was to recover damages for thus causing his death that the suit was brought. As bearing upon the question of liability, special stress was placed by the plaintiff on the youth, weakness and inexperience of Williams, and the case was submitted to the jury under the following instruction: "If you find that the deceased at the time he was employed by the defendant was a lad of seventeen or eighteen years of age, inexperienced in the handling of brakes, on a train of cars, such as that in question, and that he was unfitted for that work by reason of his unskillfulness, inexperience and

youth, and this was known to Smith; that he was employed by defendant at the time of his death and for some months previous thereto in the capacity of a common laborer only, and was ordered by Smith, the foreman and conductor of the construction train in question, acting for and as the agent of said defendant within the scope of his authority, to brake on said train out of the line of his duty as such common laborer, and that while attempting to obey such order he fell from the cars and was killed, without negligence on his part, and by the negligence of the defendant or its agent Smith, the case of the plaintiff is established and she is entitled to recover."

Evidence was given on the part of the defense to show that common laborers with construction trains were accustomed on occasion to assist with the brakes, and that Williams had requested the privilege of doing so in order that he might learn the business; but in finding as they did for the plaintiff the jury must necessarily have found against this evidence, and we must assume in reviewing the case that the facts were as the plaintiff claimed.

The principal question of law which the record presents is whether, on the hypothesis stated in his instruction, the conclusion drawn by the judge lawfully follows.    In discussing this question it has been assumed by counsel on one side and conceded on the other that in general the employer is not liable to one of his servants for an injury suffered by him in consequence of the negligence or wrongful act of another servant in the same general employment, and that, as between himself and his employer, each servant takes upon himself all the risks of the employment.    But while conceding this, it is claimed on behalf of the plaintiff that if the master wrongfully sends his servant into a dangerous place or exposes him to a risk not connected with the service, and in consequence he is injured, the rule which exempts the master from responsibility has no application, because the risk is not one which the servant has assumed. It is also contended that if, instead of being sent by the master in person, the servant is thus wrongfully exposed to

danger by one whom the master has placed over him, and to whose orders he is subjected, the responsibility is the same; the wrongful act of this superior being in law the wrongful act of the master himself. These positions are met on the part of the defense with two propositions, either of which, if sustained, is fatal to the action. These we state in our own language, as follows:

I.  That on the plaintiff's theory of the facts Williams was under no obligation to obey the order of Smith, and if he did obey it, his doing so must be regarded as his own voluntary act. If there was negligence in sending him to stop the train, there was negligence on his part in going, and therefore, conceding that in giving the command Smith stood in the position of the railway company, and that the company must assume his act, the case is the ordinary one of contributory negligence, and the action must fail on that ground.

II.  That if Smith, when he sent Williams to stop the train, was putting him to a service he had not engaged to perform, the act was not within Smith's authority as conductor, but in excess of his powers, and if wrongful was the tort of Smith alone, as much so as if he had committed an assault upon Williams; and neither morally nor legally can the railway company be held responsible.

The fact that Williams was under no obligation to obey the order of Smith, is not in our opinion sufficient to sustain the first proposition. When one person engages in the employment of another, he undertakes to obey all lawful orders, and he subjects himself for any failure to do so, to the double liability of being expelled from the employment and of being required to pay damages. It is true the master had no right to direct him to do any thing not contemplated in the employment, but when one thus contracts to submit himself to the orders of another, there must be some presumption that the orders he receives are lawful, the giving of the orders being of itself an assumption that they are lawful; and the servant who refused to obey would take upon himself the burden of showing a lawful reason

for the refusal. This of itself is sufficient reason for excusing the servant who declines the responsibility in any case in which doubts can possibly exist: he should assume that the order is given in good faith and in the belief that it is rightful; and if in his own judgment it is unwarranted, it is not for the master to insist that the servant was in the wrong in not refusing obedience. Respect for the master as well as a consideration for his own interest may very properly induce him to waive his own judgment for that of his superior, and instead of engaging in disputes and being perhaps ejected from his employment, to leave questions of doubt for future settlement. Now, although we think on the facts as the jury has found them there was no authority to send Williams to handle the brakes, yet the point was not so clear but that serious question was made of it on the trial, and it would be grossly unjust to compel the servant at his peril to decide correctly on the validity of an order presumptively lawful when the consequences of even a correct decision might be apparent insubordination and perhaps difficulty and litigation. It is perfectly just under such circumstances to leave upon the master the responsibility he assumed in giving an unwarranted order, and to hold that the servant is not blamable in yielding obedience to his superior.

It may still be said that in thus yielding obedience he accepts the risks which accompany it, for the same reasons that he accepts the risks of the employment in which he actually engaged. But the risks the servant actually assumes are only those which are properly incident to the employment; and he may always require the master to respond for injuries resulting from his personal negligence. Cases of this sort occur where the master exposes the servant to unsafe machinery or sends him into places where there are risks of which he is ignorant. *Marshall v. Stewart*, 2 Macq. H. L., 20; s. c., 33 E. L. & Eq., 1; *Mellors v. Shaw*, 1 B. & S., 437; *Ryan v. Fowler*, 24 N. Y., 410; *Chicago, etc. R. R. Co. v. Swett*, 45 Ill., 197; *Schooner Norway v. Jensen*, 52 Ill., 373; *Snow v. Housatonic R. R. Co.*, 8

Allen, 441; *Walsh v. Peet Valve Co.*, 110 Mass., 23; *Perry v. Marsh*, 25 Ala., 659; *Strahlendorf v. Rosenthal*, 30 Wis., 674. This principle may be applicable even when the risks are apparent and fully open to observation, provided the servant from his youth, inexperience or other cause is incapable of fully understanding and appreciating them. *Grizzle v. Frost*, 3 Fost. & Finl., 622; *Bartonshill Coal Co. v. McGuire*, 3 Macq., 300; *Coombs v. New Bedford Cordage Co.*, 102 Mass., 572. Now in this case the servant was inexperienced; and though it would perhaps be apparent to him that the service on which he was sent was more hazardous than that he had engaged for, yet this must have been still better understood by Smith, and we think in this particular, as well as in respect to sending him upon the service at all, the risk was not fairly upon the servant's shoulders. We are therefore of opinion that if Smith can be regarded as standing in the place of the railway company in giving the order he did give, the company must be held responsible for the injury. We agree with the Supreme Court of Pennsylvania that "where a servant in obedience to the orders of his superior incurs the risk of machinery which, though dangerous, is not so much so as to threaten immediate injury, or where it is reasonably probable that it may be safely used by extraordinary caution or skill," the case is not to be regarded as one of concurring negligence. *Patterson v. Pittsburg, etc. R. R. Co.*, 76 Penn. St., 389, 394.

Nor do we think it follows that because Smith at the time was exceeding his authority, the company is not responsible for his action. It is in general no excuse to the employer that an injury which has occurred was caused by disobedience of his orders, whether they be express orders or implied orders. He assumes the risks of such disobedience when he puts the servant into his business; and the reasons for holding him responsible for the servant's conduct are the same whether the injury results from a failure to observe the master's directions, or from neglect of the ordinary precautions for which no specific directions are

deemed necessary.    It will be conceded that for a positive wrong beyond the scope of the master's business, intentionally or recklessly done, the master cannot be held responsible; this being very properly regarded as the personal trespass or tort of the servant himself.    But when the wrong arises merely from an excess of authority, committed in furthering the master's interests, and the master receives the benefit of the act, if any, it is neither reasonable nor just that the liability should depend upon any question of the exact limits of the servant's authority.    The master fixes these, and it is his duty to keep his servant, in what is done by him, within the limits fixed.    An act in excess would still have the apparent sanction of his authority; the occasion for it would be furnished by the employment, and the injured party could not always be expected to know or be able to discover whether it was or was not without express sanction.

In this case Smith had charge of the train and of the men employed with it.    In what he did, he was not purposely committing any wrong outside the employment, but his wrong was committed while acting in the very capacity in which he was employed, and had for its manifest purpose not to injure Williams but to advance the interests of the railway company.    As between the company and any other than a fellow servant, there could be no question that his act should be deemed the act of the company.    *Shea v. Sixth Avenue R. R. Co.*, 62 N. Y., 180.    But we also think that where the superior servant by means of an authority which he exercises by delegation of the master, wrongfully exposes the inferior servant to risks and injury, the master must respond.    It is only where the risks properly pertain to the business and are incident to it, that the master is excused from responsibility; and a risk of this nature not being one of the kind, the general rule applies, and he must answer for the misconduct of his agent.    This was expressly held on facts similar to the present in *Lalor v. Chicago, etc., R. R. Co.*, 52 Ill., 401, and the cases of *Louisville, etc., R. R. Co. v. Collins*, 2 Duv., 114; *Railroad Co. v. Fort*, 17 Wall., 553, and *Frost v. Union Pacific*

*R. R. Co.*, 11 Am. Law Reg. N. S., 101, sustain the same views.

A subordinate question is made on the evidence introduced to show the poverty of the mother and sister of the intestate, and the instruction of the court based upon such evidence, which was as follows:

"In making your estimate of damages it is proper for you to consider all the circumstances in the case, and to take into consideration from the evidence, whether family of deceased were, at the time of his death, and are now in poor and needy circumstances, and looked to the boy when alive for at least partial support, and whether he gave his earnings when alive to his mother's and sister's support; whether he was able and willing to work for their benefit; and also the evidence as to the value of his services at the time of his death." We do not understand that any part of this instruction is objected to except that which permitted the jury to consider, as bearing upon the question of damages, the poverty of the family.

The damages recoverable in a case of this nature are by the statute to be assessed with reference "to the pecuniary injuries resulting from such death to the wife and next of kin of such deceased person." Comp. L., § 2351. They have no regard to the needs of the persons designated, or to any moral obligation which may have rested upon the deceased to supply their wants. If the moral obligation to support near relatives were to be the criterion, we might take their poverty into account as bearing upon the extent of this obligation; but as this may or may not have been recognized, and if recognized may have been very imperfectly responded to, it is manifest that it can be no measure of the pecuniary injury the family received or was likely to receive from the death. What the family would lose by the death would be what it was accustomed to receive or had reasonable expectation of receiving in his life time: and to show that the family was poor has no tendency towards showing whether this was or was likely to be, large or small. One man contributes liberally in aid of his poor

relatives; another delights in contributing luxuries where comforts are already abundant; but when the contribution is cut off in either case the extent of the loss is not measured by the wealth or poverty of the recipient, but by the contribution itself. A dollar lost, whether by poor man or rich man is neither more nor less than a dollar, and a. reasonable expectation of benefit to a certain amount, must, when lost, be compensated to the same extent whether the loser be rich or poor.

A *dictum* in *Potter v. Chicago, etc., R. W. Co.*, 21 Wis., 372, 375, implies that the pecuniary circumstances of the family may properly be taken into account by the jury. But if this is so, and their poverty should increase the damages, so should their wealth diminish them; and this would establish a rule of damages unknown to the statute and repugnant to the one named by it. There are, it is true, some cases in which, perhaps, such evidence must be received, because it tends to establish a moral obligation to demand assistance in the future from one at the time incapable of giving it: as where the person killed was a very young child, and at present contributing nothing in aid of any one. *Ewen v. Chicago, etc., R. W. Co.*, 38 Wis., 613; *Barley v. Chicago, etc., R. R. Co.*, 4 Biss., 430; *Chicago v. Powers*, 42 Ill., 169. But it is a sort of evidence that, when necessarily received should be used with caution.

In *Dalton v. Southeastern R. W. Co.*, 4 C. B. (N. S.), 296, to which we are referred, the damages appear to have been measured, not by the circumstances of the family, but by an estimate very properly based on the customary contributions of the deceased. The same remark is substantially true of *Franklin v. Southeastern R. W. Co.*, 3 H. & N., 211. The wealth of the defendant, it is very justly held, can be no measure of the loss sustained (*Conant v. Griffin*, 48 Ill., 410); though it would seem to be quite as suitable for the consideration of the jury as the poverty of the next of kin. See *Pennsylvania R. R. Co. v. Zebe*, 33 Penn. St., 318. His wealth and their poverty would make the like appeal to his generosity, but the response to the

appeal would indicate the extent of the loss, not the appeal itself.

As the verdict awarded to the plaintiff $3400, it would seem very manifest that the instruction misled the jury into giving damages for something besides the pecuniary injury. As the plaintiff's showing was that Williams was feeble in body and mind, and earned the wages of a common laborer only, from which his own support must be derived, it is difficult to understand any estimate which would place the loss of the family at such a sum. The annual interest on it at the customary legal rate for money borrowed would have been more than three-fourths the whole annual earnings, even supposing Williams to have had steady employment, and to have lost nothing from sickness or other contingencies; and at the lowest statute rate, it would have been more than half. It seems incredible that the family could have had reasonable expectation of receiving an annual sum to either amount from such a source, but if they had, they could at most have realized it only for his life-time, while this award of the sum in gross would enable the family to realize the income, not for his life merely, but in perpetuity.

In this opinion we have not attached importance to any mental weakness of the deceased as bearing upon the right of action. It was enough that he was inexperienced as brakeman; but whether even this was important may fairly be a question. The fact existed in this case, and we need inquire no further.

The judgment must be reversed, with costs and a new trial ordered.

The other Justices concurred.