HENRY S. RODMAN v. MICHIGAN CENTRAL RAILROAD CO.

*Railroad injury to brakeman— Unusual risk.*

Whether a brakeman can recover against the railway company for an injury received in consequence of the conductor's managing the locomotive in the engineer's absence—Q. Judgment denying such liability affirmed by equal division.

Error to the Superior Court of Detroit. (Chipman, J.) April 16–17.—October 15.

CASE. Plaintiff brings error. Affirmed.

*Conely, Maybury & Lucking* for appellant.

*Henry Russel* and *Ashley Pond* for appellee.

COOLEY, C. J. The plaintiff, a brakeman on the road of defendant, brings suit for an injury received by him while coupling cars. The injury happened to him while in the discharge of his duties as brakeman, and under the general principle that the servant takes upon himself the risks incident to his employment, the defendant is not responsible unless his case is brought within some recognized exception to the principle.

To make out an exception the plaintiff avers that at the time of the injury the engineer and fireman in charge of the locomotive of the train " temporarily left their respective posts for some purpose unknown to the plaintiff," and that the conductor, who was without competency for the purpose, undertook to take the place of the engineer, and ordered the plaintiff to make a coupling. It was while he was obeying this order, and while the conductor was managing the engine, and in consequence of the conductor's unskillfulness, that the plaintiff, as he avers, was injured. The order, it is said, was wrongful under the circumstances, and though the plaintiff, under the decision in *Chicago & N. W. R. R. Co. v. Bayfield* 37 Mich. 205, was excusable for obeying it, yet he did

not, while obeying it, take upon himself the incidental risks ; such risks not being within the contemplation of his employment.

The *Bayfield* case seems to us altogether different from this. There a common laborer on a railroad was ordered by his superior to perform the duties of a brakeman, and while doing so was injured. He was ordered into a different service to any in which he had ever engaged; and the order was plainly wrongful. But in this case the plaintiff was put to no new or different service, and the only complaint is that in the very service he agreed to perform he was exposed to a risk not properly belonging to it, and therefore not contemplated by his contract of service.

The risk was certainly unusual, and probably not in the minds of either party when the plaintiff was employed ; but that fact would not of itself determine the responsibility. Accidental injuries are often—perhaps most generally—the results of unexpected causes ; but if these causes arise in the course of a servant's employment, he must be deemed to have assumed their risks. And the only question there can be in this case is whether the plaintiff was ordered to do something which under the circumstances was outside of his employment, so that, had he been inclined to do so, he might rightfully have refused obedience to the order. And this, as it seems to us, must depend upon whether, when the contingency appears to the conductor to render it necessary, that official may for the occasion take charge of the engine, and at the same time require the brakeman to continue to perform his service.

That contingencies may and do arise in which the conductor should take charge of the engine for the time, is undoubted. The necessity may sometimes be as urgent as it is plain ; and lives may depend upon it. This might happen from injury to the engineer, or sudden illness ; and when to leave the train where the disability of the engineer occurs would endanger some other train. But there might be other reasons for the engineer leaving his post, for which the company would not be in fault, and the conductor, with the train in his charge

and under obligation to avoid other trains, must act in the emergency as the necessities of the case shall require. His highest and plainest duty in some circumstances will be to take possession of the engine and operate it. And it cannot be possible that when such is his duty the brakeman may rightfully prevent its performance by refusing to remain at his post.

In this case the plaintiff says the engineer and fireman temporarily left their posts for some purpose unknown to the plaintiff. It is not charged that they did so with the company's consent, or that there was any wrong connected with their leaving for which the company was responsible. Suppose they had gone off on a strike; may other persons employed on the train refuse to assist in moving it out of the way of other trains? Surely this question must be answered in the negative.

If under any circumstances the conductor may rightfully take charge of the engine, this suit must fail, as there is no allegation in the declaration to show that in this case he was not justified. And he being the person responsible for the safety and management of the train, must be allowed a certain discretion in deciding upon emergencies, and the presumptions must favor his action. And when he acts rightfully, it is contemplated in the employment of his subordinates that they, within their several spheres, shall assist him.

That there is nothing in the *Bayfield* case which in the opinion of the judges who decided it, conflicts with this view, is apparent from the case of *Greenwald v. M. H., & O. R. R. Co.* 49 Mich. 197. In that case a fireman was ordered to perform the engineer's duty, and while doing so an injury occurred to a brakeman, for which suit was brought. The Chief Justice, speaking for the Court, said the order " was a proper one beyond question; " and the case was disposed of on that assumption. But as respects the propriety and rightfulness of the order, that case stands upon exactly the same ground with this.

The case of *Houston &c. R. Co. v. Myers* 55 Tex. 110: s. c. 8 Am. & Eng. Ry. Cas. 114, is directly in point

here. That case differs from this only in the fact that it was the fireman and not the conductor who was managing the engine, and who was alleged to be incompetent for the duties of the engineer. A brakeman who was injured while the fireman was thus in charge, brought suit against the railroad company, but was held not entitled to recover. The judge of the Superior Court took the same view of this case, and we think his judgment should be affirmed.

The opinion of this Court in *Detroit Savings Bank v. Zeigler* 49 Mich. 157 : s. c. 1 Am. & Eng. Corp. Cas. 333, contains much respecting mutual assistance by subordinates in special cases, that applies with force to the case of servants in various capacities on a railroad train.

CAMPBELL, J. concurred.

CHAMPLIN, J. The plaintiff was a brakeman in the employment of defendant, and while so employed met with the injury complained of. He sued defendant to recover damages therefor, and filed the following declaration :

"Henry S. Rodman, plaintiff herein, who is a resident of the city of Detroit, by Conely, Maybury & Lucking, his attorneys, complains of the Michigan Central Railroad Company, defendant, a domestic corporation, which is also a resident of said city of Detroit, defendant herein, of a plea of trespass on the case, filing this declaration, entering rule to plead, etc., as commencement of suit :

*First.* For that, whereas, heretofore, to-wit, on the 17th day of November, 1882, the said defendant was owner and operator of a line of railway between Detroit, Michigan, and Chicago, Illinois, which railway passes through the city of Niles, Michigan, and the said plaintiff was an employee of defendant, and engaged as a brakeman on one of its freight trains, on the said day, and his train reached Niles on said day, and the conductor in charge of said train was one Frank Matteson, the agent of the said defendant, and said conductor had charge of said train, and command of the other employees of said defendant on said train, including the said plaintiff.

And while the said train was at Niles, as aforesaid, the engineer and fireman in charge of the locomotive of said train temporarily left their respective posts for some purpose

unknown to plaintiff; and the said conductor ordered this plaintiff to make a coupling of the car at the end of one portion of the said train to a car standing on a side track, said locomotive being attached to said portion of said train; but this the said plaintiff at first did not do, because of the absence of said engineer and fireman. But the said conductor himself undertook and attempted to fill the place of said engineer and direct the operations of said locomotive, and he peremptorily ordered this plaintiff to make the said coupling; and the said plaintiff, in obedience to said repeated orders, and not voluntarily and willingly, undertook and attempted to make such coupling, and in so doing, while himself exercising the utmost care and prudence, the plaintiff's right hand was caught in the draw-bars and badly smashed and injured, and so much injured that it became necessary to amputate the index and middle fingers of his said right hand, and they were so amputated in consequence thereof; and he was by said injury caused great pain and suffering, and he was put to great expenses about his cure, for care, nursing, physician's services and the like; and he was for a long time disabled by such injuries from attending to his ordinary occupations, and will for a long time continue to be, to-wit, during his natural life-time; and he was and is and will be otherwise sick, sore, lame and disordered.

And the plaintiff avers that said injuries to him aforesaid were directly caused by the said superior officer of plaintiff, the said conductor, compelling plaintiff to take the said risk as aforesaid, and by the unskillful manner in which the said conductor operated the said locomotive and directed its movements; and the said conductor had not the skill and experience in operating a locomotive requisite for the occasion, and was not a fit and competent person to direct and control the said locomotive engine while plaintiff was making the said coupling; and it was because of such want of fitness, competency, skill and experience on the part of said conductor so attempting, as aforesaid, to manage and direct said locomotive that plaintiff was injured as above set out, the said injury having been caused by the sudden, jerky, plunging movements of the train propelled by said locomotive.

And plaintiff was himself free from negligence in respect to the cause of said injury, whereby an action hath accrued to plaintiff and against defendant to plaintiff's damage two thousand dollars, wherefore he brings suit."

The defendant filed a general demurrer, which was sustained by the court, and final judgment was rendered in favor of defendant.

It was implied, as a part of the contract between the plaintiff and defendant, that the trains upon which the plaintiff was employed to do the service required of a brakeman should be run and operated by an engineer possessed of the requisite skill and experience for the position while he should be engaged in the performance of his duties; and while the train should be so run and operated he assumed all the risks incident to such employment, but he did not assume the risks incident to such employment should the engine be run and operated by a person without skill or experience, for this would be to put him in a situation of greatly increased peril and risk of personal safety in the performance of his duties.

In this case it is alleged in the declaration that the conductor was the agent of defendant, and had charge of the train and command of the other employees of defendant on the train, including the plaintiff. He was put, therefore, by the defendant in his place to discharge the duty which the defendant owed to the plaintiff, to see that the employees of the defendant were discharging the respective duties required of them, and in the discharge of this duty the conductor was not a co-servant but the representative of the defendant, who in that respect is bound by the act or omissions of the conductor the same as though such acts had been done or omitted by defendant personally. And the defendant having placed the conductor in a position of authority over the plaintiff and other servants, and made them subject to his direction and control, while the defendant is not chargeable for the consequences of directions given by such superior officer within the scope of the general employment, he is chargeable to plaintiff for an abuse of such authority as much as he would be to a stranger. Wood Mast. & Serv. §§ 438, 439, 450, and cases cited in notes.

Suppose the conductor had ordered a day laborer or an entire stranger to take the place of the engineer during his temporary absence, and through his negligence, carelessness

and want of skill plaintiff had received the injury complained of without fault on his part, it would have constituted such an abuse of authority as to render the defendant liable. It was likewise an abuse of his authority in the conductor to order the brakeman to couple the cars in the absence of the engineer, while he himself being a person unfit, incompetent and lacking the requisite skill and experience, attempted to manage and operate the locomotive engine in making such coupling.

By the exercise of his authority the conductor ordered the plaintiff to perform services of increased peril not contemplated by his contract with defendant. The case is no different from what it would have been had the defendant been a natural person, and without possessing the requisite skill and experience and being wholly unfit and incompetent, had himself undertaken to run and manage the engine, and had at the same time ordered the plaintiff to couple the cars, and the injury had resulted in consequence of the want of fitness, competency, skill and experience of defendant. The defendant is equally as liable for the acts of his agent, the conductor, as if they were his own, when such acts are an abuse of his authority, or where he stands in place of the defendant.

What was said in the *Bayfield* case is equally pertinent here, namely: "When one person engages in the employment of another, he undertakes to obey all lawful orders, and he subjects himself for any failure to do so, to the double liability of being expelled from the employment and of being required to pay damages. It is true the master had no right to direct him to do anything not contemplated in the employment, but when one thus contracts to submit himself to the orders of another, there must be some presumption that the orders he receives are lawful, the giving of the orders being of itself an assumption that they are lawful; and the servant who refused to obey would take upon himself the burden of showing a lawful reason for the refusal." *Chicago & N. W. Ry. Co. v. Bayfield* 37 Mich. 210. The principles laid down in that case rule this. Both are based upon an abuse of authority; and as was said in that case, "It is

.in general no excuse to the employer that an injury which has occurred was caused by disobedience of his orders, whether they be express orders or implied orders. He assumes the risk of such disobedience when he puts the servant into his business; and the reasons for holding him responsible for the servant's conduct are the same whether the injury results from a failure to observe the master's directions, or are from neglect of the ordinary precautions for which no specific directions are deemed necessary."

In the *Bayfield* case the excess or abuse of authority consisted in directing a common laborer to perform the duty of a brakeman, which was a more perilous duty than that for which the servant had contracted. In this case the abuse of authority consisted in the twofold act of ordering the plaintiff to couple cars in the absence of an engineer, and in attempting to run and manage the engine, being entirely unfit and incompetent to perform that duty, and the liability results from the combined act and order of the conductor.

The judgment should be reversed, the demurrer overruled, with leave to defendant to plead in twenty days from the time of notice of filing the remittitur, and the cause remitted to the court below for further proceedings.

SHERWOOD, J. concurred.