### COUSINEAU v. EMBURY.

1. MASTER AND SERVANT—PERSONAL INJURIES—NEGLIGENCE—EVIDENCE.

   Evidence that the arbors and collars of an edger had become so worn that the saw wabbled, and to remedy the difficulty set screws were placed in the collars of such saw, which caused the saw to pinch and throw back the material that it was shaping, that fly-backs had rarely occurred before inserting the set screws, and became frequent afterwards, that two edgermen preceding plaintiff had been injured, warranted the submission of the question of defendant's negligence to the jury, although defendant's testimony tended to show that numerous other causes might produce throwbacks.

2. SAME—ASSUMPTION OF RISK.

   Whether plaintiff assumed the risk was a question for the jury to determine, taking into consideration his age, experience, means of observation, and the circumstances of the case.

3. SAME.

   The servant assumes risks that are incident to his employment, and such dangers as he knows and appreciates, or ought to know.

Error to Cheboygan; Shepherd, J. Submitted April 6, 1912. (Docket No. 20.) Decided July 11, 1912.

Case by Jacob Cousineau against S. Harris Embury and others for personal injuries. Judgment for plaintiff. Defendants bring error. Affirmed.

*Frost & Sprague*, for appellants.

*Maxwell W. Benjamin* and *De Vere Hall*, for appellee.

BIRD, J. The plaintiff was seriously injured in the arm while in the employ of defendants at their mill in Cheboygan. While engaged as an edgerman, his arm was struck by a " fly back," as it is called in mill parlance when a splinter or piece of board is thrown back from the saws toward the forward part of the edging machine. The occurrence is not an unusual one in mills where such

machines are used. The causes which produce "fly backs" are various. It is not known with certainty what caused this particular one. The plaintiff ascribes the cause to the failure of the defendants to keep the edging machine in proper repair. The defendants show that the "fly back" might have been caused in ten other and different ways than the one alleged by plaintiff.

The trial court, against the protest of defendants, submitted the case to the jury, and it resulted in a verdict for plaintiff. The defendants now claim that the trial court erred in so doing for the reasons, (1) that, if the "fly back" was caused as claimed by plaintiff, it was not proved and was not shown to be the proximate cause of the injury; (2) that plaintiff assumed the risk.

*First.* The plaintiff accounts for the "fly back" which injured him on the theory that the arbor and collars of the edger had become so worn that they would not hold the saws firmly and securely in position without wabbling, and to remedy this defect set screws were placed in the collars; that, when the set screws were tightened, it tilted the saws and threw them out of plumb, the effect of which was to make a portion of the saw bind or pinch and carry the board up on top of the saw and throw it back with great force toward the front of the edging machine.

The plaintiff made proof that the arbor and collars were old and worn, that they had been used much longer than usual, and that an attempt was made to overcome the wabbly condition of the saws by placing set screws in the collars, which had the effect of tilting the saws as claimed. It was also shown by those who were versed in running such machines that the defects claimed by plaintiff would have a tendency to cause "fly backs." It was further shown that prior to the insertion of the set screws "fly backs" very rarely occurred, whereas, after the insertion of them, they occurred quite frequently, sometimes as many as ten a day, and that two edgermen who preceded him were injured by "fly backs" after the set screws were inserted. This showing justified the trial court in sub-

mitting to the jury the question as to whether the defects complained of would cause "fly backs." But defendants argue that it is not enough to show that the claimed defects might have caused the injury when the testimony shows that it may have been caused in several other ways, for some of which defendant would not be liable, but he must go farther, and show that the alleged defects did cause the injury. To meet this phase of the case, plaintiff introduced testimony tending to rebut the presumption that the injury was as likely to have been caused in the other ways shown by the record, and the trial court submitted the question as one of fact to the jury. This was proper. Our examination of the testimony convinces us that it brought the question as to whether the alleged defects caused the "fly back" which injured plaintiff into the domain of probabilities where the jury had the right to pass upon it.

Did plaintiff assume the risk? The general rule is that a servant assumes only such risks as are incident to his employment. *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 205. Plaintiff's contract of employment did not bind him to make repairs. Therefore the dangers of defective machinery would not be, as a matter of law, included among the risks incident to his employment. Of course, if he knew, or the circumstances were such that he ought to have known and appreciated, the dangers, he would be held to have voluntarily assumed the risk. As to whether he did voluntarily assume the risk was a question of fact for the jury to determine from his age, experience, and means for observation, together with all the other testimony bearing on the question. The trial court submitted the question to the jury in a very fair and careful instruction, and we think the defendants have no ground for complaint.

The judgment is affirmed.

MOORE, C. J., and McALVAY, BROOKE, and OSTRANDER, JJ., concurred.