No. 18,998.

H. A. MARTIN, *Appellee*, v. THE ATCHISON, TOPEKA &
SANTA FE RAILWAY COMPANY, *Appellant.*

SYLLABUS BY THE COURT.

1. FEDERAL EMPLOYERS' LIABILITY ACT—*Brakeman Acting as
   Fireman—Scope of Employment—Defective Tire—Negli-
   gence—Injuries to Brakeman—Evidence—Findings.* In an
   action under the act of congress known as the federal em-
   ployers' liability act, brought against a railway company by
   a brakeman of a freight train to recover for injuries, it was
   shown that the conductor directed the plaintiff to go forward
   and act as fireman while he himself took charge of the loco-
   motive for the purpose of allowing the regular engineer and
   fireman to go to the caboose and eat their dinner. It was
   shown that while obeying the order of the conductor the
   plaintiff received injuries resulting in consequence of the
   conductor's negligence in managing the locomotive. *Held:*

   (*a*)  In the absence of any rule of the company prohibit-
   ing the conductor from giving or a brakeman from obeying
   such an order, the conductor had authority to order the
   plaintiff to act as fireman, and in obeying such order the
   plaintiff was acting within the scope of his employment.

   (*b*)  Under the federal employers' liability act the rail-
   way company is liable for the negligence of the conductor in
   the management of the engine.

   (*c*)  The evidence is sufficient to sustain a finding that
   the plaintiff had not assumed the risk, and that he was not
   guilty of contributory negligence in obeying the conductor's
   orders.

   (*d*)  Certain special findings, when considered in the light
   of the evidence, the contentions of the parties and all the
   facts and circumstances of the case, are held not to be so in-
   consistent with each other or with the general verdict as to
   authorize the granting of a new trial.

2. SAME.—*Defective Tire—Caused by Mismanagement of En-
   gine—No Notice to Company Required.* The petition alleged
   that the injuries of the plaintiff were caused by a defect in
   the tire of one of the drive wheels of the locomotive; that it
   was loose, and had been in that condition for a sufficient
   length of time to charge the company with notice thereof.
   The jury found that it became defective by the improper use
   of the brakes by the conductor while acting as engineer, and
   that this occurred but a few moments before the injury to

the plaintiff. *Held,* that since the special findings and the evidence show that plaintiff's injuries were caused by the negligence of the conductor, the company is liable irrespective of any notice it may have had of the condition of the tire.

Appeal from Sedgwick district court, division No. 2; THORNTON W. SARGENT, judge. Opinion filed January 9, 1915. Affirmed.

*William R. Smith, Owen J. Wood,* and *Alfred A. Scott,* all of Topeka, for the appellant.

*S. B. Amidon,* and *Jean Madalene,* both of Wichita, for the appellee.

The opinion of the court was delivered by

PORTER, J.: In this action the plaintiff recovered damages for personal injuries, and the defendant appeals from the judgment.

The plaintiff was the rear brakeman of a freight train, running from Dodge City to Newton, and at the time he was injured the train upon which he was at work was engaged in hauling interstate shipments. The crew consisted of the conductor, engineer, fireman, and a head and rear brakeman. The train was made up of sixty-two freight cars. Just before the train left Larned, which is twenty-two miles west of Great Bend, the conductor directed the plaintiff to go forward and act as fireman of the engine, while he himself took charge of the engine and acted as engineer from that point to Great Bend, for the purpose of allowing the regular engineer and fireman and the head brakeman to go to the caboose and eat their dinner. It required forty-five minutes to run from Larned to Great Bend. The plaintiff testified that when he and the conductor finished eating their dinner the conductor said, "You can go to the head end; you and I will take charge of the engine and let the engine crew come back and eat."

"I obeyed instructions. . . . When we got to the head end he told me to get up and finish taking water

for the fireman; then he told me to fire the engine from there to Great Bend. . . . It must have been about 2:30 when I got on the engine at Larned. . . . As we turned the curve going into Great Bend the conductor said he heard a noise and asked me to look and see if I could see anything dragging. I looked and told him I could n't see anything. He says, 'Get down on the step and look.' I told him as soon as he shut off for town I would. As he shut off for town I turned on the blower and got down on the step and I was looking. As we hit the passing track the tire came off and hit the blow-off cock and the blow-off cock hit my leg and knocked me off the step."

He also testified:

"Neither the engineer nor the fireman nor the head brakeman objected to the conductor and me relieving the engineer and fireman and letting them go back and eat. I did n't object, I did n't dare to. We had done that frequently before."

With reference to the brakes, the plaintiff testified that the conductor looked at them just before going into Pawnee Rock and it showed that the brake was set a little, about four or five pounds, and he released it, and said, "Look how much faster it is picking up the train—how much faster it is going." The other brakeman testified that the exchange of positions on the train was made in order that the rest of the crew might eat their dinners, and that it was done for the interest of the company in order to get over the road; that they had been accustomed to do this under the same conductor; that they had been doing it most of the time that he was on that run, for about a year.

The jury found for the plaintiff in the sum of $6000, and returned special findings of fact, including the following, which defendant claims are inconsistent:

"Q. 6. If you find for plaintiff, state the exact negligence of which defendant was guilty upon which you base your verdict. A. 6. Defective tire on right rear driver.

"Q. 7. State the exact defect (if any) in the engine tire and wheel which caused the tire in question to

come off.  A. 7.  Improper use of brakes, causing expansion of tire.

"Q. 8.  How long had the defect in the engine tire or wheel in question existed (if at all) prior to the time of the accident?  A. 8.  Between Pawnee Rock and Great Bend."

Manifestly, the sixth and seventh findings can not, technically speaking, be correct.  The improper use of the brake did not constitute a defect in the tire, though there was evidence to sustain a finding that the tire became defective by reason of such improper use.  Nor was the defective condition of the tire an act of negligence, but it may have been and the evidence seems to indicate that it was caused by a negligent act in improperly using the brakes.  It seems more than probable that the answers to questions 6 and 7 became in some manner transposed.  We think the three findings considered together in the light of the evidence, the contentions of the parties, the general verdict, and all the circumstances of the case, should be construed to mean that the improper use of the brakes, causing an expansion of the tire, is the negligence of which the jury intended to find the defendant guilty; that the defect in the tire consisted of an undue expansion caused by such negligent use of the brake; that this defective condition of the tire arose between Pawnee Rock and Great Bend, and that there was nothing wrong with the tire previous to that time.  The findings were not attacked by a motion on the part of the defendant, nor a request to have the answers made more specific or definite, nor was judgment asked upon the findings. It does not seem possible that the defendant was prejudiced by the manner in which these answers were returned, nor do we find anything to indicate that the jury were attempting to evade the questions.  In view of what we have said, we can not regard the findings as so inconsistent with each other or with the general verdict as to justify the granting of a new trial.

Martin v. Railway Co.

It is insisted that the finding that improper use of the brakes caused an expansion of the tire was wholly speculative, and without any basis in the evidence to support it. The evidence of the plaintiff, in substance, to the effect that for five or six miles after leaving Larned the conductor ran the engine with the brakes partially set; evidence of the defendant that the tire had been inspected the day before, and was not loose when the engine left Dodge City; the evidence of an ex-engineer, who testified that a tire can be made to work loose by using the brakes too much or too severely and sliding the wheels, and all the circumstances in evidence showing the manner in which the accident occurred, furnish a sufficient basis for the finding. While, as suggested, there was nothing to show any sliding of the wheels, there was sufficient evidence to support a finding that the tire became loose as a result of improper use of the brakes.

We discover no fatal variance between the statements of plaintiff's petition and the proof. The allegation that plaintiff was acting in the line of his duty as a brakeman when he stood on the step of the engine is in accordance with the theory upon which the petition was obviously drawn, which is that it was his duty as a brakeman, acting under the control of the conductor, to obey orders, even if that required him to perform temporarily the duties of a fireman. The jury find that the tire became loose between Pawnee Rock and Great Bend. The petition alleged that the tire had been loose two days prior to the accident, and that defendant knew or had opportunity to know of such defect. Conceding a variance here between the allegations and the proof with respect to notice, it can not be regarded as prejudicial, if, as we shall attempt further on to show, the plaintiff's right to recover in no manner depends upon whether or not the defendant knew or had opportunity to know of any defect in the tire. There is a variance in the averments of the peti-

tion and the proof, which arises from the fact that for some reason the plaintiff saw fit to allege that the name of the unauthorized person who was operating the engine was unknown to him, and that, although the engineer and fireman were wrongfully absent from the engine, plaintiff did not know upon what part of the train they were at the time of the accident. Of course, he did know who was running the engine and knew where the engineer and fireman were, but it does not appear that defendant has been prejudiced by the misstatements of fact in the petition.

The defendant insists that plaintiff was performing work outside the regular scope of his employment, without direct authority from the company. It is, of course, true that at the time of his injuries he was not performing the usual duties of a brakeman; he was acting, for the time being, as a fireman, but it by no means necessarily follows that in so doing he was acting outside the scope of his employment.

Did the conductor have authority to order the plaintiff to perform temporarily the duties of a fireman? The plaintiff offered in evidence certain rules of the company, and others were offered by the defendant. One rule requires that freight brakemen must be on top of their trains when approaching and passing stations. Another declares that the post of the rear brakeman is on the last car in the train, which he must not leave while the train is in motion, except to apply the brakes, without instructions from the conductor. Rule 452 provides that engineers will not permit persons to ride on engines, other than designated employees in the discharge of their duties, without a written order from the proper authority. Another rule places the engineer under the direction of the conductor in the management of trains, but provides that engineers will not obey instructions that will endanger the safety of the train or require a violation of rules. One rule holds the enginemen responsible with the conductor for the

Martin v. Railway Co.

safety of the train; another holds conductors responsible for the safe management of their trains, and for the strict performance of duty of all persons employed thereon; another provides that conductors must instruct their brakemen in all their duties.

From an examination of these rules we fail to find any express provision prohibiting a brakeman from performing the duties of a fireman upon the orders of the conductor, nor do we find any rule which seems to limit the control of the conductor over the acts and conduct of the brakeman within the scope of the latter's employment while the train is in the conductor's charge. If the railway company desired to make a rule that under no circumstances should a brakeman act as fireman without orders from some officer superior to the conductor, it would seem a very easy matter to have so provided.

The conductor is given control of the train and of the train crew, and must instruct the brakemen in all their duties; he is given authority to order the rear brakeman to leave his post on the last car in the train. In view of the absence of any specific rule on the subject, we do not think it can be said that there is anything in the nature of the business or the manner in which it is usually carried on that would make it seem unreasonable that a brakeman might on occasion be called upon by a necessity or emergency to perform the duties of a fireman; and certainly it would not seem unreasonable in this instance. According to the plaintiff's testimony he had been a fireman on engines for five years on other railroads. So far as appears from the evidence, he may have been as well qualified to perform the duties as the regular fireman. In our opinion, therefore, the conductor must be held to have had authority to order the plaintiff to act as fireman. His act in this respect, as well as that of the brakeman in obeying the order, seems to us as the necessary, natural and proper result of the thing they were employed to

do. Whether an emergency existed requiring the exchange of the positions we think was for the conductor to determine, and the plaintiff, who was under his control, was not required to call for the papers or rules showing the conductor's authority.

The case of *Chicago & N. W. Ry. Co. v. Bayfield,* 37 Mich. 205, is in point. There the railway company was held liable for the negligence of the conductor of a work train in ordering a laborer to do work outside the scope of his contract. In the opinion in that case it was said:

"It will be conceded that for a positive wrong beyond the scope of the master's business, intentionally or recklessly done, the master can not be held responsible; this being very properly regarded as the personal trespass or tort of the servant himself. *But when the wrong arises merely from an excess of authority, committed in furthering the master's interests, and the master receives the benefit of the act, if any, it is neither reasonable nor just that the liability should depend upon any question of the exact limits of the servant's authority.* The master fixes these, and it is his duty to keep his servant, in what is done by him, within the limits fixed. An act in excess would still have the apparent sanction of his authority; the occasion for it would be furnished by the employment, and the injured party could not always be expected to know or to be able to discover whether it was or was not without express sanction.

"In this case Smith had charge of the train and of the men employed with it. In what he did, he was not purposely committing any wrong outside the employment, but his wrong was committed while acting in the very capacity in which he was employed, and had for its manifest purpose not to injure Williams but to advance the interests of the railway company." (p. 213.) (Italics ours.)

Was the plaintiff acting within the scope of his employment at the time he was injured? As we have said, the mere fact that he was employed as a brakeman and was injured while temporarily performing the duties of a fireman does not settle that question. He was employed as a brakeman, but if the duties of a

brakeman required him to obey the orders of the con-
ductor, even to the extent of acting as fireman when in
the opinion of the conductor there was an emergency
or a necessity that he should perform such duties,
then it would seem to follow necessarily that in obey-
ing the orders of the conductor he was not acting be-
yond the scope of his employment.   Whether a certain
act is outside the scope of the servant's employment
frequently depends upon the other question, whether
the superior officer has authority to require him to per-
form the service.    This is the view taken by Judge
Cooley in *Rodman v. Mich. Cent. R. R. Co.*, 55 Mich.
57, 20 N. W. 788.    The question there was whether a
brakeman can recover against the railway company
for an injury received in consequence of the conductor's
managing the locomotive in the engineer's absence.
The Michigan court was equally divided, and therefore
the judgment of the lower court denying such liability
was affirmed.   Judge Cooley wrote the opinion for those
members of the court who held there was no liability,
and in the opinion used this language:

"And the only question there can be in this case is
whether the plaintiff was ordered to do something
which under the circumstances was outside of his em-
ployment, so that, had he been inclined to do so, he
might rightfully have refused obedience to the order.
And this, as it seems to us, must depend upon whether,
when the contingency appears to the conductor to ren-
der it necessary, that official may for the occasion take
charge of the engine, and at the same time require the
brakeman to continue to perform his service.

"That contingencies may and do arise in which the
conductor should take charge of the engine for the
time, is undoubted.   The necessity may sometimes be
as urgent as it is plain; and lives may depend upon it.
This might happen from injury to the engineer, or
sudden illness; and when to leave the train where the
disability of the engineer occurs would endanger some
other train.   But there might be other reasons for the
engineer leaving his post, for which the company
would not be in fault, and the conductor, with the train

in his charge and under obligation to avoid other trains, must act in the emergency as the necessities of the case shall require. *His highest and plainest duty in some circumstances will be to take possession of the engine and operate it.*" (p. 58.) (Italics ours.)

It was held that the conductor was acting rightfully in taking charge of the engine, but that the plaintiff's suit failed because he had assumed the risk of the injury. The other members of the court held that the services were not contemplated by the plaintiff's contract, but the conductor, in the exercise of his authority, having ordered him to perform services of increased peril, the case was "no different from what it would have been had the defendant been a natural person, and without possessing the requisite skill and experience and being wholly unfit and incompetent, had himself undertaken to run and manage the engine, and had at the same time ordered the plaintiff to couple the cars, and the injury had resulted in consequence of the want of fitness, competency, skill and experience of defendant." (p. 63.) This division of the court held that the case was ruled by the decision in *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich. 205.

In *Barry v. Hannibal & St. J. Ry. Co.*, 98 Mo. 62, 11 S. W. 308, 14 Am. St. Rep. 610, it was held that where a servant steps outside his usual duty, and the departure is such as the necessity of the case fairly and reasonably calls for, keeping in view the character of the work the servant is contracting to perform, then such departure will not of itself defeat a recovery of damages in case he is injured. In that case an engineer was killed by being run over by a hand car. He had left his engine, although the rules required him to remain there.

The following Kansas cases cited by defendant, *Hudson v. M. K. & T. Rly. Co.*, 16 Kan. 470, *Crelly v. Telephone Co.*, 84 Kan. 19, 113 Pac. 386, *Kemp v. Railway Co.*, 91 Kan. 477, 138 Pac. 621, were all cases

where the plaintiff sought to hold the master liable for as assault committed by the servant. In each case it was held that the tortious act of the servant was outside the scope of his employment, and that, for the time being, the relation of master and servant was suspended. In the Kemp case, a brakeman shot and killed one who had been stealing a ride on a passenger train after the trespasser had left the train at the brakeman's command. It was said in the opinion:

"It is difficult to state with precision the exact meaning of the phrase 'scope of the employment,' but from the foregoing expressions in decisions and textbooks it may be said generally that to fix liability upon the master or employer the act must not only be done in the time, but in pursuance of the objects of the employment, in furtherance of duty. If done solely to accomplish the employee's own purpose or devise, although in an interval of his regular service, the employer is not liable." (p 481.)

In the Crelly case, *supra,* the duty of the servant was to have the plaintiff sign a voucher for compensation due her at the time she was quitting the service. Because she refused to sign the voucher he violently assaulted and beat her. It was held that the use of force for such a purpose was not within the scope of his employment. In the opinion it was said that "to assault or ·beat a telephone operator is not a recognized or usual way of procuring her signature to a voucher on which to draw the wages due to her." (p. 24.)

While we do not wish to be understood as intimating that it would have made any difference if there had been proof in that case showing that for some time that had been the usual and customary way for the telephone company to procure signatures to vouchers, nevertheless, in determining the scope of plaintiff's employment in the present case some consideration must be given to the fact that it appears from the testimony that it had been the usual custom for more

than a year for this particular train crew to exchange positions, and for the conductor and a fireman to operate the engine while the enginemen went to the caboose to eat their dinner.

It is manifest that little aid can be had from a consideration of those cases where a corporation is sought to be held liable for the wrongful or malicious act of an agent or servant where the doing of the act could not in the nature of things be in the exercise of the ordinary duties of the agent or servant. As a general rule it is true that if the servant, instead of doing that which he is employed to do, does something else which he is not employed to do at all, the master can not be held responsible for what he does, nor is it sufficient that the servant did the act with the intent to benefit or serve the master. The act must be done in attempting to do what the servant has been employed to do.

In the case of *Gavigan v. Lake Shore, etc., R. Co.,* 110 Mich. 71, 67 N. W. 1097, cited by defendant, a section hand was a member of a gang engaged in relaying a track, and it became necessary, in order to distribute the rails, to move two freight cars. The plaintiff was injured in obeying the order of the section boss to climb upon one of the cars for the purpose of moving it so that the rails might be distributed, and it was held that he was acting outside the scope of his employment. It was, therefore, held that he had assumed the risk, and further, that the negligence of the section boss was that of a fellow servant. We decline to follow that case as an authority on the question of the scope of the servant's employment. It seems to us that it would be far more reasonable to hold that the act of the plaintiff in that case was a necessary, natural and proper result of what he was employed to do, rather than to hold that in such a situation the work of laying the rails must stop while a train crew was sent for to move the freight cars.

Another case cited by defendant is *Richmond & D.*

*R. Co. v. Finley*, 63 Fed. 228, holding that "an engineer in temporary charge of a train, in the absence of any conductor, can not waive a rule, well known to a brakeman, absolutely prohibiting brakemen from coupling and uncoupling cars except with a stick, by ordering such brakeman to go between cars and place in position, by hand, a bent coupling link, which can not be controlled with coupling sticks." (Syl. ¶ 1.)   This, and the case of *Indiana, etc., Gas Co. v. Marshall*, 22 Ind. App. 121, 52 N. E. 232, proceed upon the principle that it would establish an unsafe rule to hold that a superior officer could without direct authority from the company change safe and proper rules adopted by the master for the performance of the work and direct workmen to prosecute their labors in dangerous places, and that if the danger or peril which the workman is directed to do by his superior officer is plain and obvious, so that he understands its dangerous character, it is his duty to decline the employment.   These cases can hardly be said to be in point in view of the fact that the defendant has failed to call our attention to any absolute rule, or a rule of any kind, prohibiting a brakeman from acting as a fireman under the orders of the conductor.

In *Brown v. Jarvis Engineering Co.*, 166 Mass. 75, 43 N. E. 1118, 55 Am. St. Rep. 382, it was held that the foreman of a gang of men employed in constructing a foundation for a printing press has no authority, while such work is suspended, because of the presence of a van containing rolls of paper, which must be unloaded and rolled into the basement of the building, to direct the men constituting a part of his gang to assist with such unloading, though their so doing may expedite the work for which they were employed.   It was said in the opinion:

"In the construction of a building it frequently happens that one set of workmen has to wait until another set of workmen gets through, but it never has been supposed that this would authorize a foreman of a gang of painters to direct his men to assist carpenters

or plasterers, or to attempt to do their work, although the doing of it might in a sense be said to facilitate the carrying forward of the work of painting. Men are employed because they are supposed to be skillful in their particular trades, and, when they are set to do a work within their trade they carry no implied authority from their master to engage in any other trade." (p. 77.)

It was further said in the opinion:

"The act of the defendant's servants was not a necessary, or natural, or proper result of anything that the servants were employed to do." (p. 77.)

In the present case everything that was done by the conductor and the plaintiff in operating the engine was done in furtherance of the defendant's business, undoubtedly for the purpose of avoiding delay in the operation of the train while the engineer and fireman were taking their dinner. How can it be said that the conductor and fireman had temporarily laid aside the master's business while engaged in running the train from Larned to Great Bend?

It is true that according to the statements of the petition the plaintiff knew that the conductor was not an experienced engineer, and knew that it was no part of the conductor's duty to operate the engine, and that no emergency existed requiring him to do so, and also knew that the conductor was acting in direct violation of the rules of the company. It is self-evident, as the defendant contends, that plaintiff would not have been injured if he had remained at the rear of the train; but if the conductor had authority to require plaintiff to perform duties upon the engine, the plaintiff may recover, notwithstanding his knowledge that the conductor was violating the rules of the company. (*A. T. & S. F. Rld. Co. v. Randall*, 40 Kan. 421, 19 Pac. 783; *Chicago & N. W. Ry. Co. v. Bayfield*, 37 Mich. 205.) The jury by their verdict have found that an ordinarily prudent person in his situation would not have refused to obey the orders.

Martin v. Railway Co.

In our view, to hold that the conductor had authority to order the brakeman to perform the duties of fireman practically determines the case. The action was brought under the act of congress known as the "employers' liability act." The court instructed that if the jury found that the conductor ordered the plaintiff to go with him to the engine and act as fireman while he acted as engineer, and after discovering that something was wrong with the engine, directed the plaintiff to get down on the step to ascertain what was the matter, the plaintiff was justified in obeying the instructions and orders of the conductor, notwithstanding a rule to the effect that the post of duty of the plaintiff as rear brakeman was on the last car, unless the danger in complying with the orders of the conductor was so obvious and imminent that an ordinarily prudent person acting as brakeman would refuse to obey it; and that, on the other hand, if they found that plaintiff did not use that degree of care for his own safety which an ordinarily prudent person under like circumstances would have exercised, either in getting upon the engine and acting as fireman, in compliance with such order, or in attempting to make the examination, he could not recover.

The court also charged, in substance, that if the conductor carelessly and negligently applied the brakes to the wheel and caused the tire to expand and become loose, and the plaintiff was directly injured by reason thereof, then the defendant was guilty of negligence and would be liable to the plaintiff for injuries sustained, provided the plaintiff did not assume the risk incident to the examination of the tire, as otherwise indicated in the instructions; and further, if they found he was guilty of contributory negligence, they were directed to apportion the damages as provided in the federal employers' liability act. We think the instructions correctly stated the law, and that there was evidence to sustain the verdict and findings.

In view of all the evidence, including the showing that the plaintiff had years of experience as a fireman on an engine, we think the jury were justified in finding that an ordinarily prudent person with his experience and in his situation would not have refused to act as fireman, nor to attempt to make the examination to ascertain what was the matter with the engine when the conductor ordered him so to do. In this view of the case the variance between the averments of the petition and the proof respecting the defendant's knowledge or notice of the defective condition of the tire, as well as the finding that the defect itself occurred only a few moments before the accident, and the instructions of the court on that issue, are of no importance. We rest our decision on the proposition that the conductor of the train had authority to direct the brakeman to perform the duties of a fireman on the engine whenever it appeared to the conductor necessary that an exchange of that kind should be made; and even though the conductor was violating a rule of the company in acting as engineer, that would not defeat the plaintiff's right to recover. If the conductor's negligence in assuming to act as engineer without experience, and in improperly using the brakes, caused the accident which resulted in the plaintiff's injury, under the limitations mentioned in the instructions, the plaintiff is entitled to recover for injuries occasioned by the negligence of the servant of the defendant. The question of notice goes out of the case. For instance, if the negligence of the conductor, while operating the engine, had instantly injured the plaintiff, so that the company could not be said to have had any notice at all of any defect caused by the negligent act in time to have remedied it, still the company would be liable for his negligence.

It follows that the judgment must be affirmed.