WELCH v. BRAINARD.

1. MASTER AND SERVANT—INJURY TO EMPLOYÉ—ASSUMPTION OF RISK.

Every adult of ordinary intelligence must be held to know that ensilage, or any similar article, if undermined so that the pile overhangs its base, is to be expected to fall.

2. SAME.

An employer does not become an insurer by requesting his employé to incur danger in his service, unless he conceals from the employé his knowledge of, or at least fails to make known to him, a latent danger.

3. SAME.

Among the daily duties of a farm laborer was the removal of ensilage from his employer's silo for the purpose of feeding stock. By direction of the employer, the ensilage was taken from the bottom of the pile, which became undermined, and a portion slid off, injuring the laborer. *Held*, that he assumed the risk, and that the employer was not liable.

Error to Macomb; Eldredge, J. Submitted October 10, 1895. Decided December 30, 1895.

Case by Charles L. Welch against Addison H. Brainard for personal injuries. From a judgment for plaintiff, defendant brings error. Reversed.

*Dwight N. Lowell* (*James G. Tucker* and *Geer & Williams*, of counsel), for appellant.

*Canfield & Spier*, for appellee.

HOOKER, J. The plaintiff was injured by the fall of a quantity of ensilage upon him while engaged in removing a quantity from the defendant's silo for the purpose of feeding defendant's stock, which was plaintiff's daily duty, as farm laborer. He recovered a verdict in an action based upon the alleged negligence of the defendant—*First*, in not properly storing the ensilage, by reason of

which it became rotten, and more likely to slide and cave off than it would otherwise have been; *second*, in not informing the plaintiff of the danger of undermining it, but, on the other hand, directing him to remove it in that manner.   The defendant has appealed, and alleges error upon the court's refusal to direct a verdict in his favor.

The silo consisted of a building about 21 feet square, and was filled with ensilage to the depth of 10 feet.   According to the testimony of the plaintiff, a section 4 feet wide, extending across the room, was being taken down from the top, upon discovering which, the defendant directed plaintiff to remove it from the bottom, after which he did so, until the 4-foot section was taken out to the floor. In removing it from the bottom, he said that he used a fork, and dug into the mass for a foot or two, and the ensilage would drop down.   He was asked if he began digging from the bottom after he had his talk with the defendant, and answered:

" I did, taking it right from the bottom.

" *Q.* And then you worked a section right up, did you?

" *A.* I kept working from the bottom, and taking a dungfork and jabbing into it, and I got enough that way. * * * It would naturally drop down. * * *

" *Q.* What was the condition of the silo, or the ensilage, at the time you went there for your last basketful?

" *A.* The condition was that it was two feet under the bottom of the ensilage.

" *Q.* How far did that extend?

" *A.* It ran up, probably, two or three feet.

" *Q.* As I understand, it was worked in from one to two feet?

" *A.* Yes, sir.

" *Q.* I asked you if the ensilage had been worked, from the front of the silo, back two feet, in a perpendicular manner. * * *

" *A.* It went up with a slant."

He stated that he was feeding 68 bushels a day, and that he was getting the last of 34 baskets when the slide came.   He was stooping down, and had no warning, and could not escape.

From this testimony, it is plain that the pile of ensilage overhung its base. He had taken out 34 bushels from the bottom of the new section; the first section having been finished that morning, and carried out, as he states in his testimony. This amounts to about 42 cubic feet, in its loosened condition. It would doubtless be less when packed, but, after making due allowance, the conclusion is irresistible that a large quantity of ensilage was removed. But, if it was undermined no more than the plaintiff states, it is evident that a portion would necessarily break loose and fall, if its cohesiveness was overcome by the weight of the overhanging mass, in obedience to a law of nature that even children understand. The plaintiff admits that he would expect that ensilage would be likely to cave.

We think that the law does not hold the defendant liable in damages for the accident, by reason of his failure to so pack his ensilage as to prevent its rotting, or from caving down when undermined. Every adult of ordinary experience must be held to know that ensilage, or any similar article, is to be expected to fall under such circumstances, and a farmer who hires a laborer to do farm work has a right to suppose he knows and understands the law of gravitation. The defendant is said to have directed the plaintiff to remove this ensilage in this way, and that is urged as a reason for enforcing the plaintiff's claim. An employer does not necessarily become an insurer because he requests his employé to incur danger in his service. It is only when he conceals his knowledge of, or at least fails to make known, a latent danger. But, if it were otherwise, we discover no testimony that shows that defendant asked the plaintiff to undermine this ensilage to a dangerous extent. He merely directed him to take it from the bottom. We may properly take judicial notice that when earth is to be removed, or stone quarried, it is a common and economical method to undermine it, causing it to loosen and fall by its weight, thus facilitating its removal; and, where good judgment is used,

accidents rarely happen. Employer and employé understand that this practice is attended with more or less danger, and the latter assumes the risk, as one incident to the employment, when he consents to do such work in the face of an apparent danger. The defendant had no reason to suppose that plaintiff would be careless. The law does not impose upon the master the burden of this accident, and the court should have directed a verdict for the defendant, as requested.

The judgment is reversed. No new trial is ordered.

McGRATH, C. J., LONG and MONTGOMERY, JJ., concurred. GRANT, J., did not sit.