110 71
127 207
110 71
s67ᴺᵂ1097
133 ²198
110 71
148 ¹323
110 71
f149 ¹477
110 71
151 ²214
f151 ¹560
110 71
d153 ¹88

GAVIGAN *v*. LAKE SHORE & MICHIGAN SOUTHERN RAIL-
WAY COMPANY.

1. MASTER AND SERVANT—NEGLIGENCE—SCOPE OF EMPLOYMENT—
ASSUMPTION OF RISK—INJURY TO RAILROAD EMPLOYÉ.
The fact that a servant is directed by a superior to per-
form a service outside of the scope of his employment, and is
injured while attempting to perform such service, does not
give him a right of action against the master for the in-
jury so received, where the dangers of the service were ap-
parent, and its performance undertaken without objection.
So *held* where an experienced section man, while engaged,
with the other members of the section gang, in moving a
loaded car by forcibly shoving an empty car against it, was
ordered by the section boss to climb upon the loaded car and
set the brake, and was injured by the empty car's being
pushed against him while he was climbing a ladder on the
loaded car to éxecute the order.

2. SAME—SECTION MEN—FELLOW-SERVANTS.
In such case the negligence, if any, was that of the section
boss or of the men under his control, all of whom were fel-
low-servants of the injured employé.

Error to Hillsdale; Lane, J. Submitted April 24, 1896.
Decided July 8, 1896.

Case by Andrew J. Gavigan against the Lake Shore
& Michigan Southern Railway Company for personal
injuries. From a judgment for plaintiff, defendant brings
error. Reversed.

*C. E. Weaver* (*George C. Greene* and *O. G. Getzen-
Danner*, of counsel), for appellant.

*C. M. Barre, E. J. March*, and *Watts, Bean &
Smith*, for appellee.

HOOKER, J. The plaintiff was a section hand upon a
railroad, and had many years' experience in such capacity,

and as foreman of such gangs. On the day that he was injured, the section gang of which he was a member, and a gang of an adjoining section, were engaged in relaying a spur-track with rails that had been unloaded at a point upon said track. In order to distribute such rails, it was necessary to move two freight cars standing upon the track, and the plaintiff attempted to climb upon one to set the brake. While climbing up the ladder at the end of the car, the other car was pushed against him by the other men engaged in the work, and he was injured. He testified that he was ordered by the section boss in charge to climb upon the car, and that he supposed that he would have lost his place if he had refused, and that it was not a part of the duty of section men to move cars, or climb upon them to manipulate the brakes. The uncontradicted evidence shows that the plaintiff and all of his colaborers obeyed, without protest or question, the direction to move the loaded car, and by pushing and the use of bars they had moved it for a distance, and to a point where the dust and dirt of the highway made the work difficult. Then they resorted to bumping the loaded car with an unloaded one, all uniting in pushing it with force against the loaded car several times, thereby moving it to a point in close proximity to the main track. It was to prevent its being run into the switch and upon the main track that the direction to climb the car and put on the brake was given.

We have so often held that the section boss is a fellow-servant with the men under him, and pointed out the distinctions applicable to the question of fellow-service, that we deem it unnecessary to repeat them here. We have no doubt that, in running the car back and forth, all of those engaged were fellow-servants. The important questions are:

1. Was the plaintiff asked to perform an extraordinary service, outside of the scope of his employment, in moving the cars, and in climbing the ladder for the purpose of setting the brake?

2. If so, does it follow that the act of the section boss in requesting such service was the act of the master, and is the master liable for the injury under such circumstances?

Counsel for the plaintiff appear to contend for the broad propositions that, in directing a service outside of the scope of the employment, the boss represented the master, and that, by consenting to perform the service, the plaintiff did not assume the risk, inasmuch as he might be discharged by the boss if he refused to perform the service. In other words, the master is to be considered an insurer of the servant performing extraordinary service by direction of a superior, whenever he chooses to obey a direction of one in charge for fear of discharge. If the master is to be charged with neglect, it is for a failure to perform a duty, and, had he himself given the command in this case, the only possible negligence would be the request to perform extraordinary service, unless there was some hidden danger from the service. Many cases hold that, where an employé of mature years and of ordinary intelligence and experience is directed by the employer himself to do a temporary work, outside of the business he has engaged to do, and enters upon its performance without objection on account of his want of skill, knowledge, or experience in doing such work, no negligence can be predicated upon such act alone. Bailey, Mast. Liab. 220, and cases cited. The master who asks a servant to perform some hazardous service outside of his employment, the danger of which is not apparent, and of which the master is advised, is under an obligation to inform the servant of such danger; but where the danger is obvious, or equally known and apparent to both, the case is different. The analogy is close between such a case and one where one employs an infant or inexperienced person. In such case the master owes a duty to point out the danger; but, where the danger is obvious or known to such person, there is no such duty. *Mc-*

*Ginnis* v. *Bridge Co.*, 49 Mich. 466; *Welch* v. *Brainard*, 108 Mich. 38.

Counsel for plaintiff cite us to the cases of *Chicago, etc., R. Co.* v. *Bayfield*, 37 Mich. 205, and *Jones* v. *Railway Co.*, 49 Mich. 573, in support of their contention. A quotation from Bailey, Mast. Liab. pp. 222-225, is in point here:

"While great stress is laid in some cases upon the fact that the risk has been increased, as well as, in other cases, that the servant was injured while in the performance of a hazardous act outside of his general employment, yet it is difficult to ascertain that any special importance is to be attached to that fact alone, any further than that the risks of the general employment, thus increased, are not assumed as risks incident to the employment, and therefore knowledge thereof, actual or presumed, must be shown by the master, unless they are such as are obvious, requiring no special knowledge or skill to understand or appreciate. If such dangers are not obvious, and the employé may not be presumed to understand or appreciate them, then he must be warned and instructed. I know of no rule that, where the servant fully understands and comprehends the dangers of an increased risk, or of a risk attendant upon a temporary or occasional act of service, and he performs the act, or attempts to do so, the master is liable for the injury he may sustain, merely upon the ground of such increased risk, or risk attending such temporary employment. The liability in these as in other respects is made to depend upon the knowledge and experience of the servant, and the warning and instructions given, where any such are by law required. The rule has been stated that if, while in the performance of such a temporary service, the servant's opportunity for observing the danger was equal to that of the company, or if he was required to perform an unusually dangerous service for good reason, as for the safety of passengers, then the master cannot be said to have been negligent.

"In *Jones* v. *Railway Co.*, from the report of the case, it might be understood that the mere fact of being required to perform other duties than such as were properly embraced in his contract would impose a liability

upon the master to respond in damages for injury he might sustain while so engaged. Yet such could not have been intended by the court, but, rather, the ground for recovery was within the principles stated in *Chicago, etc., R. Co.* v. *Bayfield.* In fact, the court so state. There the recovery proceeded upon the ground of directing an inexperienced lad, who did not comprehend the danger, to perform the hazardous duty of applying brakes to moving cars.

" The same position was taken by counsel in *Cole* v. *Railway Co.,* 71 Wis. 114 (5 Am. St. Rep. 201), to wit: That the mere direction of the master to perform such temporary and dangerous work is negligence on the part of the master sufficient to sustain the action of the employé so injured in the performance of such work while he is using ordinary care on his part. The court say : ' We are very clear that the broad rule contended for by the learned counsel for the respondent is not sustained by the authorities, nor by the general rules of law which define the relations of employer and employé. Some of the cases cited may have some general statements which give some countenance to the rule as stated by counsel; but when the facts of each case are considered, it will, we think, be found that no such broad rule was ever intended to be sanctioned by the courts.' The court further state that negligence of the master cannot be predicated simply on the fact that he directed his employé to do the work; that in every case of negligence the evidence must show some violation of duty on the part of the master. No case can be found where it has been held that the mere fact that the employer requested his employé to perform a temporary work outside of his ordinary employment was a violation of any duty which he owed to his employé. If the particular work ordered to be done is of a dangerous character, and one which requires peculiar skill in its performance, and the servant so directed has not the requisite knowledge or skill for doing the work with safety, and such want of skill is known, or might be reasonably supposed to be known, to the employer, in that case the direction of the master to do the work might be justly held to be a violation of duty which he owes to his employé, even though the employé undertook to do the work without objection or protest upon his part. The Wisconsin court reviews many leading cases upon the

subject, including those relied upon by the respondent's counsel, and asserts that none sustain the position contended for by such counsel.  The court further say they are not called upon to decide what the rule would be if the employé, when ordered to do such temporary work, objected on account of his want of experience and knowledge, and, notwithstanding such declaration, his employer insisted upon it, and thereupon he undertook to do the work, after such protest, rather than subject himself to the risk of being discharged from his employment.  They neither approve nor disaffirm the rule stated in *Leary* v. *Railroad Co.*, 139 Mass. 587 (52 Am. Rep. 733). The weight of authority, as stated in note to *Cole* v. *Railway Co.*, is that the mere fact of objection and protest by the employé, the conduct of the master not amounting to coercion, does not change the rule; and many cases are cited."

See, also, *Keenan* v. *Railroad Co.*, 145 N. Y. 190.

In *Wheeler* v. *Berry*, 95 Mich. 251, it was held that—

"The claim that a master negligently put a servant at dangerous work, against his protest, and outside of the scope of his employment, is sufficiently answered by proof that the servant was thoroughly instructed in the use of the saw by which he was afterwards injured; that whatever danger there was was apparent; that he had full and complete knowledge of the risk; that he was strong in body and mind, and in the full possession of all of his faculties; and that he had frequently performed the same work for a year, and knew that he was liable to be called upon to do it."

The evidence shows that the section hands were engaged in track work, and without objection, or apparent thought upon the part of any of them that it was out of the line of their duty, proceeded to move a car which was an obstacle to the prosecution of their work.  While it may be said that the scope of their employment was a question of fact, and therefore for the jury, the same might be said in a case involving the removal of a rock or other *debris* that had fallen or been placed upon the

track, or a train or car that had been derailed; and if the jury could be found to sustain such claim, we might not be justified in holding it error to submit the question to the jury, though satisfied from common observation that the work of the section gang is supposed to include nearly all kinds of labor that may be imposed upon them by the road master which relates to or facilitates the maintenance of the track; in short, that they are emergency men, so far as the track is concerned. A section boss who should not require his gang to push a car onto a side track, thereby averting a possible disaster, would be properly subject to severe condemnation, if nothing more; and while we are not disposed to say that it was improper to submit this case to the jury, inasmuch as witnesses were found to imply by their testimony that, according to the usages of the road, the boss should have suspended operations until an engine could have been procured to move the car, and a brakeman to climb the car and manage the brake, we think, under the proof in the case, that a verdict of that kind might properly be set aside by the trial court as contrary to the evidence. But, however that may be, we think that it conclusively appears that the plaintiff had as much information as to the character of the work and its possible dangers as any one, and that there is nothing that can appropriately be called coercion. He admits that he was familiar with his duties, and railroad affairs generally, and there was no special danger in climbing the car. It consisted in the act of his fellow-servants, who, negligently or otherwise, pushed the car down against the loaded car before he got to the top of the ladder, and this risk was obvious. This was a risk he assumed when he entered upon the service required, and, under the authorities cited, there is nothing to show a breach of duty upon the part of the employer. If the boss was careless in causing the car to be pushed, it was the negligence of a fellow-servant.

The judgment is reversed.    No new trial will be ordered.

GRANT and MOORE, JJ., concurred with HOOKER, J. MONTGOMERY, J., concurred in the result.    LONG, C. J., did not sit.