BOMAN *v.* MASHEK CHEMICAL & IRON CO.[1]

1. MASTER AND SERVANT—PERSONAL INJURIES — CONTRIBUTORY NEGLIGENCE—ACTS IN EMERGENCIES.

  Plaintiff, engaged in unloading sawdust from a car into a hopper in a platform from which ran a conveyor, undermined a frozen mass, and, to escape it in its fall, stepped back into an uncovered place in the conveyor casing, of which he was excusably ignorant, and was injured. He had been warned of the danger of getting into the hopper which he avoided. *Held*, that he was not guilty of contributory negligence on the theory that, having developed the dangerous situation, he was bound to see to it that there was a safe way to escape from it and to escape by any other way at his peril.

2. SAME—SAFE PLACE TO WORK—ASSUMPTION OF RISK.

  A servant, when employed and instructed to commence work at a particular place, is under no obligation, in order to protect himself from a charge of contributory negligence, to first go all over the building or plant and make himself familiar with each piece of machinery, and the danger he may incur in case he comes in contact with it in its then condition.

Error to Delta; Stone, J. Submitted November 16, 1906. (Docket No. 122.) Decided February 5, 1907.

Case by August Boman against the Mashek Chemical & Iron Company for personal injuries. There was judgment for plaintiff, and defendant brings error. Affirmed.

To convey into its mill, for fuel, sawdust brought upon its premises in cars defendant used a platform and a conveyor which ran from above, down to, and through the platform into a pit into which the sawdust was unloaded. The box or casing in which the conveyor ran, made, with the platform, an acute angle, and there was at the platform level but eight inches between the front or car side

---

[1] Rehearing denied April 30, 1907.

of the platform and the front of this casing.  Upon each side of the conveyor there was a hopper under the platform, leading into the pit, the opening in the platform being about 5 feet long and of a width varying, proportionally, from 2½ feet to 10 inches; the narrowest point being about 4 inches from the side of the conveyor, and the space between the opening and the front or car side of the platform being, uniformly, 3 inches in width.  The railroad cars employed had no roofs, the doors of the cars opened outward, and were eight feet high.  The method was to bring a car alongside the dock or platform, in which position the floor of the car was some inches, not less than four, from the platform, open the door, place a board from the car floor to the platform to prevent the falling of the sawdust outside the hopper, and, working first from the platform, to empty the car, by pulling or raking, and later from the inside of the car by shoving or pushing the sawdust into the hopper.  It was usual for the men to stand on the platform back of the opening or hopper, and with a tool provided, having a handle properly six feet long, but which was sometimes shortened by breaking, or by being cut off, to work at the sawdust until space had been made in the car.  As originally constructed, the casing or shaft of the conveyor, which had been in operation for about one year, had its fourth or upper side uncovered.  A short time after it was started its upper front side was covered to keep out rain and snow.  Frequently this covering was knocked off by slabs or other substances carried over and down by the conveyor inside the casing, and such openings had been found at the point where the casing met the platform. It is the testimony of one of the witnesses for defendant, employed as a carpenter, that on the day the plaintiff was injured, at about 6 o'clock in the afternoon, he repaired, by covering, such an opening just above the platform, being directed so to do by one of defendant's foremen, who gave as a reason "because I don't want anybody to get hurt."

Plaintiff, a mature man and intelligent, was set to work at about 7 o'clock on the evening of January 18, 1905, to unload a car of sawdust. In going along the platform, with the foreman, he was obliged to pass by and step over or at the front of the elevator. He was told, he says, by the foreman, to be careful. "If you get into this, you are gone. You will be killed if you get in there," which statements plaintiff referred to the hopper. The sawdust was frozen. The foreman watched him a short time, and then left him. It was the first time plaintiff had done this work. No artificial light was furnished. There is testimony tending to prove that it was a moonlight night, and that there was snow on the ground and some snow and ice on the platform. No one saw plaintiff at the moment of the injury, although a man was working inside the car, putting sawdust into the hopper on the other side of the conveyor. It is plaintiff's claim, supported by his testimony, that he did not see the uncovered elevator casing, if it was uncovered when he passed it; did not know it was uncovered; that, being furnished with a hook with a short handle, he stood with one foot in the door of the car and one foot on the platform behind the hopper, and, so straddling the platform opening, he picked at the frozen sawdust, leaning and reaching into the car until he discovered above his head a large lump or chunk of frozen sawdust about to fall upon him; that he stepped quickly back, and apparently to one side, into the conveyor, his left leg being caught by a descending lug. Later his left foot was amputated. He released his leg without stopping the conveyor, and was found sitting or lying on the platform. No one had before been injured by stepping into the elevator. It does not appear that any one had ever before stepped into it. To recover damages for this injury, suit was brought; the negligence of defendant alleged in the declaration being nonperformance of the duties to safely cover and keep covered the elevator and to inform plaintiff of and warn him against the danger incident to the position in

which he was placed. There was a verdict and judgment for plaintiff.

*F. D. Mead* (*E. C. Eastman*, of counsel), for appellant.

*G. R. Empson* (*Gjertson & Lund*, of counsel), for appellee.

OSTRANDER, J. (*after stating the facts*). In their main brief counsel asked to have considered contentions stated by them as follows:

" *First.* The court erred in refusing to instruct the jury to return a verdict for the defendant, as requested. The court was requested to instruct the jury to return a verdict for the defendant, because (1) the plaintiff has, by his testimony, and the testimony in the case, not only failed to show that he was himself free from fault or negligence in the premises, but, on the contrary, that he was guilty of negligence, which contributed to the injury; (2) the plaintiff assumed the risks incident to his employment; (3) the negligence of the defendant, if any, was not the proximate cause of the injury. And the injury was not such a one as the defendant, even though negligent, could have reasonably anticipated would be the natural or probable result of its negligence. * * *

" The court erred in instructing the jury as follows:

" 'Take into consideration the time of day, exercising your own judgment and common sense, as to the degree of daylight or darkness at that season of the year and at that time. There are certain things a jury is supposed to know—when the sun rises and sets, and matters of that kind.'

" The court erred in instructing the jury as follows:

" ' A person, when employed and instructed to commence work at a particular place, substantially as in this case, is under no obligation, in order to protect himself from the charge of contributory negligence, to first go all over the building or plant and make himself familiar with each piece of machinery, and the danger he may incur in case he comes in contact with it in its then condition.' "

It is clear that the opening in the elevator next to the platform served no purpose of defendant's business, that

the conveyor shaft was not in repair, and the resulting situation was a dangerous one. The contributory negligence of plaintiff is shown, it is claimed, by the fact that he developed the situation from or out of which he hastily retreated, must be held to have anticipated the result of undermining the sawdust, and was bound to see to it that there was a safe way to escape from a position of danger created by himself and to escape by any other way at his peril.

Plaintiff did escape the falling sawdust, in which respect the case is unlike, and therefore cannot be ruled by, *Welch* v. *Brainard*, 108 Mich. 38. It is true there was plenty of room on the platform back of the hopper. But we cannot say that safety with respect to the danger which threatened was better attained by moving in that direction than by moving in the one in which he moved, except by assuming that plaintiff knew the elevator was, for 12 or 14 inches and next to the platform, uncovered. The position in which he was standing when he discovered his danger would, probably, control his movements. It is possible that from the position in which he stood he took the only way of retreating. He knew there was great danger if he was, by any cause, carried into the hopper. It is said that the rule that, where one in the presence of imminent danger is compelled to choose a way of escape, he is not guilty of contributory negligence because he makes a wrong choice, does not apply, and that the proximate cause of the injury was not the opening in the elevator, but was the putting himself in a position of danger from which he found it necessary to flee. The argument assumes the existence of facts, one of which is that plaintiff carelessly created the danger from which he sought to escape, the other that in the usual course of the business it could not have been reasonably anticipated that an employé in escaping the hopper might be obliged to do as plaintiff did, step to the side of the opening in the car and towards the conveyor, instead of at all times standing or stepping back of the hopper. We cannot say, as matter of law, these facts existed. There is room for a differ-

ence of opinion as inferences shall be drawn from all the facts and circumstances disclosed. Facts similar to these were found to exist in *Groff* v. *Mill Co.*, 58 Minn. 333, relied upon by defendant. And, without attempting to here state the facts, we think the case of *Rysdorp* v. *Lumber Co.*, 95 Wis. 622, also relied upon, opposed to the contention of defendant. No requests to charge were made on the part of defendant except the one that a verdict for defendant be directed. The jury found that plaintiff did not know about the uncovered conveyor, and was not inexcusably ignorant; both questions being fairly submitted to them. They were told that, if they found the elevator had been repaired on the day in question, defendant was not liable. The testimony that it was so repaired is said to be uncontradicted. This point is first made in the supplemental brief, and the testimony is inferentially, if not directly, disputed by the foreman by whose direction the witness who testified to having made the repairs says he made them. The portions of the charge of the court criticised are detached, and do not fairly present the instructions as a whole. Taken as a whole, the charge was favorable to defendant, with great care presented the issues to be determined, and could not have been misapprehended by the jury. That portion of the charge stated which relates to the duty of plaintiff to make himself familiar with his surroundings is a restatement substantially of the rule announced in *Swoboda* v. *Ward*, 40 Mich. 420, and was not misapplied here.

The judgment is affirmed.

CARPENTER, MONTGOMERY, HOOKER, and MOORE, JJ., concurred.