HEMMILA v. CLEVELAND CLIFFS IRON CO.

1. MASTER AND SERVANT — ELECTRICITY — WARNING SERVANT — MINES.

Plaintiff, a young man of eighteen years of age, was employed by defendant mining company as a laborer and in the course of his employment, which was work upon the ground, he was ·ordered by his superior to ·climb a steel tower, upon which a crew were stringing electric wires, for the purpose of releasing two of the wires upon the cross arm. After he had safely released one of the wires he attempted to raise the second, upon which a team was drawing, above the arm, and was forced against the insulator, breaking his shoulder. He alleged in his

declaration that the defendant failed to instruct him properly in the performance of his duties, and that he was required to go from the work which he was employed to do on the ground up the steel tower and to do work in which he had not been sufficiently instructed, and that defendant had failed to advise or warn him of the dangers connected with such employment and was negligent in failing to give proper signals and directions to other employees to loosen the wires and render his work safe: *held*, that evidence tending to sustain plaintiff's claim presented a question of fact for the jury relative to the negligence of the defendant and questions of contributory negligence and assumed risk.

2. SAME—ASSUMED RISK.

Where the servant understands the dangers of the increased risk or of the risks attendant upon the occasional act of servants, and he performs the act or attempts so to do, the master is not liable for any injury which he may sustain upon the sole ground of increased risk, or risk attending the temporary employment.

3. SAME.

Where instructions to a servant are required, the instruction, to be adequate, should point out, not only the nature of the risk, but also the proper method of avoiding it, since the purpose of advising the servant how to do work that is accompanied by danger is to secure not only its performance, but his safety.

4. SAME—FELLOW-SERVANTS—NEGLIGENCE.

Nor could the claim of plaintiff be disposed of on the theory advanced by counsel for the defendant that the proximate cause of the accident was the failure of plaintiff's foreman, who had immediate supervision of his work, to direct another servant to release the taut wire which a team was pulling on by decreasing the tension upon it.

5. SAME—ASSUMPTION OF RISK—CHANGE OF EMPLOYMENT.

Where the servant is engaged in doing work that he was employed to perform and is called upon to do work of a different kind, he assumes the obvious dangers incident to his changed employment.

6. SAME—CONTRIBUTORY NEGLIGENCE.

*Held*, also, that whether plaintiff was at fault in inferring

that the work was going on as usual and that he could safely lift the wire and maintain his position on the tower, fifty feet from the ground, was a question of fact for the jury.

7. SAME—TRIAL—INSTRUCTIONS TO JURY—CHARGE.

It was not error on the part of the court to instruct the jury under the peculiar facts of the case that if plaintiff's assumption of risk was out of the case, the question of contributory negligence would also be out. Plaintiff was not required as matter of law to notify the foreman what conditions existed at the top of the tower or make an effort to ascertain the extent of the risk involved in lifting the wire over the arm, but if plaintiff recognized, or should have recognized and appreciated the risk of lifting the connection over the insulator, he assumed the risk: if he did not appreciate the risk it could not be said that he was guilty of contributory negligence.

Error to Marquette; O'Brien, J., presiding. Submitted January 25, 1915. (Docket No. 23.) Decided March 17, 1915.

Case by William Hemmila against the Cleveland Cliffs Iron Company for personal injuries. Judgment for plaintiff. Defendant brings error. Affirmed.

*William P. Belden,* for appellant.

*Le Gendre & Driscoll,* for appellee.

OSTRANDER, J. Defendant was constructing a line for transmission of electric power, and upon the particular occasion its agents were stringing wires upon steel towers which were about 57 feet high. Upon each tower there were three cross arms, and at each end of each of them was an insulator over which the wires were strung. A team of horses was used to draw the wires along over the cross arms. Lengths of the wire, or of some of the wire, were connected by means of a sleeve, through which the ends were run and bent, as illustrated:

Defendant's Exhibit 2.
SLEEVE
Cleveland-Cliffs Iron Co.

Plaintiff was sent upon one of the towers to release two wires, one on the upper, and one on the next lower, cross arm, to which they had been drawn, but over which the connections interfered with their passing. What was required to be done was to lift the wires so that the connections would pass the arms. He released the upper wire, and in releasing the one on the next lower arm he claims to have been injured. According to his testimony, he found the upper wire, or connection, drawn tight against the arm, or insulator, and the other and lower wire drawn still tighter, on account of the strain being put upon it by the team of horses which was 1,300 feet away upon the ground. The instant he released the sleeve, or connection, by lifting, which required the exercise of considerable force, it moved, or jumped ahead, jerking him down against the insulator, breaking his shoulder. His feet going down between braces on the tower prevented his falling to the ground. In doing the work, linemen were employed and groundmen and teamsters; the linemen being paid higher wages than the groundmen. Plaintiff was a groundman, hired in September, 1909, and injured February 5, 1910. He was 18 years old.

In his declaration the plaintiff alleges that the work he was employed to perform was common work and labor upon the ground along the transmission line, under the orders and directions of one Stanley Scott, an agent of defendant, who was in charge of the

work.   After a statement of duties owed him by defendant, it is alleged:

"That defendant did not perform its said duties, or any of them, but on the contrary thereof, and in breach and violation of its said duties, the said defendant wrongfully, carelessly, and negligently allowed, permitted, and suffered him to be and remain uninstructed and uninformed how to do and perform all the duties which it required him to do, and wrongfully, carelessly, and negligently failed and omitted to instruct him how to perform all the duties which it required him to do and perform; and it wrongfully, carelessly, and negligently failed and omitted to warn him of the dangers incident to the performance of such last-mentioned duties, and wrongfully, carelessly, and negligently allowed, permitted, and suffered him to do and perform such duties without being properly or adequately warned or instructed; and it wrongfully, carelessly, and negligently, unduly and unnecessarily hurried him in and about the performance of the duties which it expected and required him to do on the day of the occurrence of said injuries, and defendant, to wit, on the day of the occurrence of said injuries, wrongfully, carelessly, and negligently ordered and required him to go up on said tower No. 100 and loosen, disengage, handle, and place said wires which' had become caught upon said insulators, to wit, as aforesaid, which were duties outside of the scope of his said employment, and were work and duties which he had had no experience in performing, and was unused to performing, and were more dangerous to perform than said duties which he was hired and employed by defendant to do and perform, and which he was used to performing; and wrongfully, carelessly, and negligently ordered and required him to hurriedly do and perform such last-mentioned work and duties; and wrongfully, carelessly, and negligently failed and omitted to inform or warn him of the safe and proper method, way, and manner of doing and performing such duties, or of the dangers to which he might and would be subjected and exposed while performing such duties; and it wrongfully, carelessly, and negligently allowed, permitted, suffered, and caused him

to do and perform such last-mentioned work in such a way or manner that he was liable to be injured while doing and performing the same; and it wrongfully, carelessly, and negligently allowed, permitted, suffered, and caused the wires on said connections which were caught as aforesaid in said tower No. 100 to stick and protrude beyond the ends of the sleeves, and such connections to be so unskillfully made and joined as to make the work of releasing, loosening, and handling them on said tower No. 100 at the time last aforesaid unnecessarily unsafe and dangerous, and allowed, permitted, suffered, and caused the work of stringing, placing, and stretching said wires to be carried on while such connections and wires were, to wit, in such last-mentioned condition, and in an unsafe condition, and allowed said team to pull upon said wires while plaintiff was engaged in and about the loosening, disentangling, placing, and handling said wires on said tower No. 100 at said last-mentioned time; and wrongfully, carelessly, and negligently allowed, permitted, suffered, and caused the work of loosening, disengaging, and placing said wires on said tower No. 100 to be done under and by an improper and needlessly unsafe method and manner; and wrongfully, carelessly, and negligently failed and omitted to adopt, use, or employ any safe method of doing and performing the work of loosening and disentangling said wires, and placing said connections on the southerly side of said insulators, and although (as defendant well knew, or in the exercise of ordinary care for plaintiff's safety and protection would have known) the place and position which plaintiff occupied while doing and performing such last-mentioned work was an unsafe and dangerous one, and the way and manner in which such last-mentioned work was being carried on (especially the handling of said wires with and by means of said team at said last-mentioned time) was being carried on in a manner which needlessly exposed plaintiff to danger of injury, the said defendant wrongfully, carelessly, and negligently failed and omitted to warn or inform plaintiff of the dangerous nature and character of said place and position, or of the fact that he was so needlessly exposed to danger, and failed and omitted to explain to him the danger to which he was subjected

and exposed while so doing and performing such last-mentioned work in said last-mentioned place. and position; and wrongfully, carelessly, and negligently failed and omitted to furnish, provide, and maintain for plaintiff a reasonably safe place to work on said last-mentioned day; and plaintiff depends and relies upon each and all of the said wrongful, careless, and negligent acts, conduct, and breaches, failures, violations, and omissions of duty in this paragraph mentioned, alleged and set forth as grounds of recovery herein."

The issues of fact were submitted to a jury, which returned a verdict in plaintiff's favor, which the court declined to set aside. Defendant assigns as error the refusal of the court to direct a verdict for defendant, the refusal to give defendant's fifth request to charge, the refusal to grant a new trial, and various of the instructions to the jury, and argues in this court three propositions, which are:

"(1) That the court erred in refusing to direct a verdict for the defendant.

"(2) That, if the evidence presented a question of fact for the jury, the instructions given were nevertheless erroneous, conflicting, inconsistent, and ambiguous.

"(3) That the court erred in refusing to grant defendant's motion for a new trial."

1. The motion for a directed verdict was based upon several grounds: (*a*) That, adopting plaintiff's version of the facts, the proximate cause of the injury was failure of the foreman to give, or cause to be given, proper signals to the teamster, or proper warnings of danger to plaintiff, both of which duties, if they were duties, were delegable, and for the purpose of giving them the foreman was a fellow-servant of plaintiff; (*b*) plaintiff has failed to prove a duty to instruct and the necessity for instruction; (*c*) plaintiff was aware of all risks and assumed them; (*d*) his own carelessness contributed to his injury.

The testimony for plaintiff tended to prove that work upon the towers was more dangerous than work upon the ground; and this would be the natural, and perhaps the necessary, inference if there was no testimony upon the subject. Although he had, on various occasions, 10 or 12 in all, climbed a tower, plaintiff had never been called upon to do any work upon them. It must therefore be inferred that there was some hazard, some risk, assumed by one working upon one of the towers which a groundman, working on the ground, did not assume. And it must be inferred that ordinary care in working upon a tower involved something not included in ordinary care in working upon the ground. It requires no argument to support the proposition that a certain skill, making for safety, would be acquired by the ordinary man by experience in working upon a tower which one having no such experience would not be likely to possess. Skill so acquired serves not only to discover, but to avoid, untoward consequences of the risk. If a case is supposed where instruction of the servant is required, the instruction to be adequate would not only point out the nature of the risk but the proper method of avoiding it. The purpose of advising a servant how to do work which is at all dangerous is not only to secure performance of the work, but the safety of the workman. Whether a servant is doing work which he engaged to do, or is called from that to perform work of a different character, he assumes the obvious risks of the employment.

"I know of no rule that, where the servant fully understands and comprehends the dangers of an increased risk, or of a risk attendant upon a temporary or occasional act of service, and he performs the act, or attempts to do so, the master is liable for the injury he may sustain, merely upon the ground of such increased risk, or risk attending such temporary employment." Bailey, Master's Liability, 222 *et seq.;*

*Gavigan* v. *Railway Co.*, 110 Mich. 71 (67 N. W. 1097).

Assuming that plaintiff understood that the particular manner of connecting lengths of wire which was in use at the time was what prevented the wire from passing smoothly over the cross arm and made it necessary for some one to lift it over, that he understood that the considerable force required in the particular case was made necessary because the wire was made taut by the action of the team, that when he lifted it it would jump ahead, can it be said, as matter of law, that he comprehended the danger of doing what he did do or the necessity for signaling the teamster to slacken the wire? It is to this point that in the last analysis the case comes. If he did not assume the risk, the case cannot be disposed of upon any theory of the negligence of a fellow-servant (the foreman) in failing to give signals to the teamster. The testimony for plaintiff tends to prove that, seeing the sleeves connecting the wires approaching the tower, the foreman in charge of all of the work told plaintiff to ascend the tower and lift the connections over the arms. When plaintiff started to perform the duty thus imposed upon him, the foreman stood near him watching operations. The wires did not go over the cross arms on the next tower, but ran down from the tower in question towards the earth and to the team of horses. The wire not only jumped ahead, when plaintiff lifted it, but to one side, away from the pole. It is obvious that he might have refused to lift either wire, and, having lifted the first and upper one safely, he might have refused to lift the other one until the team had been halted by signal and the wire slackened. Can it be said that plaintiff was at fault in inferring, if he did infer, or in assuming, that the work was going on as usual, that he was expected to lift the wire as he did lift it, and that he could do it safely

and maintain his position on the tower 50 feet from the ground? The inference from plaintiff's testimony is that the foreman was watching him, knew that he had not before been called upon to perform similar service, and from his experience and position knew the risk which was assumed.

Considering all of the circumstances, I am of opinion that whether plaintiff can be held to have comprehended the risk was a question for the jury. What has been said disposes of appellant's contentions unless the court committed error in submitting the controlling question to the jury.

2. The court said to the jury, among other things:

"Now, gentlemen, it was the duty of the defendant, when it hired the plaintiff and continued him in its employment, not to order him to do work outside of the scope of his employment, if that work was more dangerous than the work that he was called upon to perform; and if it did order the plaintiff to do work outside of the scope of his employment, and that work was more dangerous than the work he was called upon to perform incident to his employment, then the defendant assumed any risk of injury that the plaintiff might incur while doing such work outside of his employment, and the defendant would be liable therefor."

It is obvious that, if the subject was left here, the governing rule was not correctly stated. But in a connection not precisely immediate, nor so remote as to indicate that the statement quoted and the qualification now to be quoted were not to be considered together, the court, recognizing the true rule, said:

"Now, while it is true that the plaintiff would assume the ordinary and obvious risks that are incident to any work that he would be ordered to do, even work outside of the scope of his employment, he would not assume those dangers unless they were so open and apparent that a person of his age, intelligence, and understanding would have known and appreciated those risks and dangers. Now on that subject, gentlemen, you should take into consideration all of the evi-

dence in the case. You have a right to consider the height of the tower. You have a right to consider the fact that the team was pulling on the wire. You have a right to consider the question whether experience was necessary for a man to understand how to protect himself in case he were handling that wire. You have a right to consider whether a novice could do that work as well as an experienced lineman. And if you find by a preponderance of the evidence that the risk was not one that was open and obvious, then, gentlemen of the jury, the question of assumption of risk is out of this case; and in that case the question of contributory negligence would also be out of this case, and the defendant would be liable then, if it failed to warn and instruct him; and there is no claim here on the part of the defendant that it did warn or instruct him of any dangers incident to releasing the wire."

The instruction that if assumption of risk was out of the case the question of contributory negligence would also be out of the case is criticised, it being contended by appellant that it was nevertheless a question for the jury whether plaintiff should not have notified the foreman, Scott, of the conditions he found existing and made some effort to ascertain the nature and extent of the possible risk before lifting the connection over the arm. The argument amounts to this: That plaintiff may have been negligent in assuming a risk which he did not assume. "Negligence" is, of course, a failure to exercise due care, and what is due care depends upon the circumstances attending action or the failure to act. If it is determined that plaintiff should have recognized, or did recognize, and appreciate, the risk of lifting the connection over the arm, then he assumed the risk. If he did not recognize and appreciate the risk, and was not informed of it, and if he did what seemed to him the proper thing to do, how can it be said that he was negligent? It is a case in which the same group of circumstances must be

relied upon to show either that he was negligent· or that he assumed the risk of injury.

I am of opinion that no reversible error is made out, and that the judgment should be affirmed.

BROOKE, C. J., and MCALVAY, KUHN, STONE, BIRD, MOORE, and STEERE, JJ., concurred.